ATCHISON, T. & S. F. RY. CO. v. SKEEN.
(No. 401.)

(Court of Civil Appeals of Texas. El Paso.
Feb. 25, 1915. Rehearing Denied
March 18, 1915.)

1. APPEAL AND ERROR ☞216—RESERVATION
OF GROUNDS OF REVIEW—INSTRUCTIONS.

Under Rev. St. 1911, art. 1971, as amended by Acts 33d Leg. c. 59, requiring the charge to be submitted to the parties for inspection, and providing that objections thereto shall be presented before the charge is read to the jury, and that all objections not so made shall be waived, the refusal of special charges could not be reviewed where there was no bill of exceptions showing that objections to the main charge were presented and the refusal of the special charges objected to at the time.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. ☞216; Trial, Cent. Dig. § 627.]

2. RELEASE ☞57—FRAUD—SUFFICIENCY OF EVIDENCE.

In an employé's action for injuries, evidence as to whether a release was induced by a promise of employment which the representatives of the employer making the promise knew the employer would not carry out *held* to support a verdict for plaintiff.

[Ed. Note.—For other cases, see Release, Cent. Dig. §§ 106–108; Dec. Dig. ☞57.]

3. RELEASE ☞17—FRAUD—PROMISE OF EMPLOYMENT.

If the authorized agent of an employer as an inducement to the execution of a release promises an injured employé, and induces him to believe that if he will execute the release he will get employment from the company, and if such promise is not made in good faith, the release is voidable, and may be set aside for fraud.

[Ed. Note.—For other cases, see Release, Cent. Dig. § 32; Dec. Dig. ☞17.]

Appeal from District Court, El Paso County; M. Nagle, Judge.

Action by T. D. Skeen against the Atchison, Topeka & Santa Fé Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Turney & Burges, of El Paso, and Terry, Cavin & Mills and A. H. Culwell, all of Galveston, for appellant. Wallace & Gardner, of El Paso, for appellee.

HARPER, C. J. Appellee filed this suit for damages for personal injuries, which, he alleged, were occasioned through the negligence of appellant.

Appellant, among other defenses, pleaded a settlement and release. Appellee, by supplemental petition, admitted that he signed the release set up, admitted receipt of $850, but that the release was obtained by fraudulent misrepresentations upon the part of the agents of the railway company, in that he was promised as a part of the consideration for the execution of the release, employment by the railway company, which was refused.

The trial before jury resulted in verdict and judgment for $5,000, less the $850 paid, from which this appeal is perfected.

[1] The appellee objects to a consideration of the first and second assignments of error, because being based upon the refusal of special charges, and the record failing to disclose any bills of exception showing that appellant presented objections to the main charge, and that the refusal of the special charges were objected to at the time cannot be considered under Rev. St. 1911, art. 1971, as amended by Acts 33d Leg. 59. The objections are well taken, and the assignments are overruled for that reason. Heath v. Huffhines, 168 S. W. 974.

By the third assignment it is urged that the verdict of the jury is contrary to the preponderance of the evidence: (a) Because the plaintiff did not show by a preponderance of the evidence that the release pleaded by defendant as a defense was procured by fraud; (b) that the evidence does not show that the agent who procured the release promised to plaintiff employment as an inducement to the execution of the release.

The portion of the release pleaded and admitted in evidence essential to this opinion reads:

"The Atchison, Topeka & Santa Fé Railway Company, to T. D. Skeen, Dr.

"213 N. Sheldon St., Clovis, N. M.

"Date, 1912.

July 6th. For and in full release, discharge, and satisfaction of all .claims, demands, or causes of action arising from or growing out of any and all injuries sustained by me of every character and description, whether now apparent or which may hereafter develop, while in the performance of my duties as brakeman at or near Ft. Sumner, N. M., on or about the 16th day of October, 1911, as well as any and all claims of whatsoever kind or character I may have against the said railway company, prior hereto and up to and including the date hereof. In making this settlement, no promise or representation is or has been made relative to future employment.

Settled in full for........ $850.00

"Received of the Atchison, Topeka & Santa Fé Railway Company, eight hundred fifty and no/100 dollars, in full payment of the above claim. In consideration of the payment of said sum of money, I, T. D. Skeen, of Clovis, N. M., hereby remise, release, and forever discharge said company of and from all manner of actions, causes of action, suits, debts, and sums of money, dues, claims, and demands whatsoever, in law or equity, which I have ever had or now have against said company, by reason of any matter, cause, or thing whatsoever, whether the same arose upon contract or upon tort.

"I have read the above voucher, receipt, and release and fully understand the same.

"In testimony whereof, I have hereunto set my hand this 6th day of July, 1912.

"[Signed] T. D. Skeen."

This relieves the railroad company of further liability unless its execution be held to have been induced by fraud.

[2] The following is substantially all the testimony which relates to the questions raised:

---

Plaintiff's testimony:

"I signed the release. Mr. McMahon was superintendent and Mr. Starkweather general superintendent. I received a telegram stating that Mr. Starkweather desired to meet me at the superintendent's office. I met him there. He asked me what I wanted in settlement. I told him that I was still in bad condition, and didn't want any lawsuit, but wanted to go to work, and he said: 'There isn't any reason why you cannot go to work, but we cannot give you a written agreement to that effect.' I replied: 'Your word is good with me.' In speaking of the matter, I was to retain my rights in the train service, and was to be given office work until I could return to the train service. Mr. Starkweather made that agreement with me. Those present while we were talking this over were Mr. McMahon, Starkweather, and Morrissett, a stenographer. Morrissett was claim adjuster. Starkweather told me that they didn't want me to bring a suit; they wanted to settle with me. I made a proposition to settle for $2,500, and it was refused. I said to him: 'It is not the money so much that I want, but I want employment. I have my wife and five children here, and have been out of employment nearly a year and want to go to work, and if you will put me to work, I will sign that release.' And Mr. Starkweather said: 'I do not see any reason why you cannot go to work; Mr. McMahon can place you.' I think these were his exact words. I still believed at that time that I was going to get well and could resume my former service. And in speaking of clerical work, I said: 'You understand I cannot support my family on less than $65 per month.' I understood that they were to give me work at $65 per month and promote me as my ability would warrant. If my foot did not get well I was to continue in the clerical work. If my foot got well, I was to maintain my position—my seniority. In addition to the life job, they were to pay me $850. This was for time I had lost up to that time. I took the last proposition under advisement until next morning, then went to the claim adjuster's office, and, while waiting for him to complete the papers, I saw McMahon, and said to him: 'I'm going to sign that release, and just as quick as I get back from Topeka, I want you to put me to work,' and he said: 'All right.' I relied on their statements. Their promises of employment induced me to sign the release."

G. C. Starkweather:

"I am not now in the employment of defendant. I had a conversation with Skeen in regard to the settlement with the company for his injuries. I asked him what he wanted in settlement. I think his first demand was $2,000 and a situation. I told him that the situation part would have to be left out entirely; that I would not talk to him along that line. I offered him $750, and he refused it. I then said to him: 'That is all I can do, but will take it up and see if I can get you another hundred.' Then he said something about a clerical position, and said, 'How will I stand here as a brakeman?' and I turned to McMahon and asked, 'Is there anything against Skeen here?' and he said, 'No,' and I told Skeen, 'You will stand as a brakeman after you get well, the same as before.' I got a telegram giving authority to pay $100 more, informed Skeen, and he took the matter under advisement until next morning. I left that night. I could have made a position for him if I had wanted to, and so could McMahon. I explained to Mr. Skeen that it was the uniform practice of the Santa Fé Company in making settlements for injuries not to offer future employment as a consideration for a release. I did not hold out to him the promise of future employment as an inducement to secure this release, with the intention of not fulfilling the agreement. I did not intend to stand in the way of his re-employment. I absolutely refused to give him any promise of position."

J. E. McMahon, defendant's witness:

"I was present at the conversation between Starkweather and Skeen in regard to a settlement of his claim for injury. Starkweather did not offer to Skeen in my presence a clerical position as an inducement to secure this release."

Arthur Dinan, defendant's witness:

"I was present at a conference between Mr. Starkweather and Mr. Skeen until Skeen left to consult with his wife. Starkweather offered him $700 and Skeen then wanted to know whether he would promise him a position as a clerk during the time his foot was getting well. Mr. Starkweather absolutely refused to give him any promise of any position during the time or at any time in the future."

Morrissett, defendant's witness:

"I was present at a conference between Mr. Starkweather and Mr. Skeen, in which the question of settlement was taken up. Skeen met Starkweather and myself at McMahon's office by appointment on the morning before the settlement was made for the purpose of taking up the matter of settlement. Starkweather asked Skeen what he thought we ought to do for him, and he made us two propositions; one was that we were to pay him $2,000 and give him a clerical position; and the other was that we should pay him $100 a month until he was able to go back to work. Starkweather turned them both down. I did not make an offer to him of $850 and employment. No such offer was made to him in my presence."

[3] The rule in this state seems to be that if the authorized agent of the company, as an inducement to the execution of the release, promised the plaintiff, and by such promise induced him to believe, that if he would execute the release he would get employment from the company, and that if such promise was not made in good faith, then the release was voidable, and subject to be set aside for fraud. Rapid Tr. Co. v. Smith, 98 Tex. 553, 86 S. W. 322. Under the facts of this record, the only question presented for our determination is: Was there that preponderance of evidence required to establish that the promise of employment was made? To put it the other way: Is the evidence so lacking as to be so deficient in its preponderance that a new trial should be here ordered? For, if the promise of employment was made, then, by the defendant's witnesses' testimony, they knew that the promise would not be fulfilled, because they swear that the Santa Fé Company made no promises of future employment in such cases of settlement; therefore its agents were not authorized to make them, and, if made, they knew that they would not be carried out.

We think the evidence above quoted sufficient to sustain the verdict and judgment rendered in the respect mentioned, and the judgment is accordingly affirmed.