ATCHISON, T. & S. F. RY. CO. v. HARGRAVE. (No. 435.)†

(Court of Civil Appeals of Texas. El Paso. May 27, 1915. On Rehearing, June 17, 1915.)

1. MASTER AND SERVANT ☞293—INJURIES TO SERVANT—INSTRUCTIONS—APPLICABILITY TO EVIDENCE.

In an action for injuries to a railroad brakeman's eye caused by hot sand from the engine flues, an instruction permitting recovery if the jury found that it was· negligence to sand out the flues at that time, when they knew the brakeman was on the top of the car, was not erroneous as predicating negligence on an act by the operatives of the engine which was necessary and was done in the usual and customary manner, where there was no evidence that it was necessary to sand out the flues at that particular time.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1148-1156, 1158-1160; Dec. Dig. ☞293.]

2. MASTER AND SERVANT ☞286—INJURIES TO SERVANT—SUFFICIENCY OF EVIDENCE—NEGLIGENCE.

In an action for injuries to a railroad brakeman, evidence held sufficient to take to the jury the negligence of the engineer in making an emergency stop when the signal for the ordinary stop was given, whereby the train was pulled in two, and the air rushing from the broken hose blew rust and dirt into the brakeman's eye.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010-1015, 1017-1033, 1036-1042, 1044, 1046-1050; Dec. Dig. ☞286.]

3. APPEAL AND ERROR ☞499—PRESENTING QUESTIONS IN LOWER COURT—REQUESTED CHARGES—SUBMISSION TO COURT AND COUNSEL.

The refusal of requested charges will not be reviewed where the bills of exceptions thereto do not show that the charges were presented to the court and submitted to opposing counsel for examination within a reasonable time after the charge of the court was given to the attorneys for examination, as required by Acts 33d Leg. c. 59.

[Ed. Note. For other cases, see Appeal and Error, Cent. Dig. §§ 2595-2598; Dec. Dig. ☞499.]

4. TRIAL ☞121—MISCONDUCT OF COUNSEL—ARGUMENT—COMMENT ON EVIDENCE.

In an action by a railroad brakeman for loss of his eye, where negligence by the company's agents in the treatment of the eye was charged, and the company physician testified that he made a superficial examination of the eye, and ordered plaintiff to go to a hospital, argument by plaintiff's attorney that, though he was compelled to treat the case in a general sort of way, he was not going to treat it as superficially as defendant's doctors treated plaintiff's eye, does not require a reversal of the case.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 294-298, 300; Dec. Dig. ☞121.]

5. DAMAGES ☞132—PERSONAL INJURIES—LOSS OF SIGHT.

Where a railroad brakeman, who had previously· had good health and was earning from $125 to $145 per month, received injuries which caused great suffering and resulted in the total loss of sight of one eye, with danger to the other eye, a verdict for $10,000 damages is not so excessive as to show an abuse of the jury's discretion as to the amount of damages, nor to indicate passion or prejudice, or an improper conception of the measure of damages.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372-385, 396; Dec. Dig. ☞132.]

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by C. E. Hargrave against the Atchison, Topeka & Santa Fé Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed, and motion for rehearing overruled.

Turney & Burges, of El Paso, Terry, Cavin & Mills and John G. Gregg, all of Galveston, and Goldstein & Miller, of El Paso, for appellant. Robt. T. Neill and Brown & Terry, all of El Paso, for appellee.

WALTHALL, J. Appellee, C. E. Hargrave, instituted this suit in the district court of El Paso county against appellant, the Atchison, Topeka & Santa Fé Railway Company, for damages for personal injury sustained by him by reason of the loss of the sight of his right eye while in the service of the company as a brakeman, and while engaged in the handling for it of interstate

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

† Writ of error pending in Supreme Court.

commerce. The case was tried before a jury on two allegations of negligence, the first alleging that he gave to the engineer a signal which required an ordinary stop of the train, but that the engineer, instead of making an ordinary stop, negligently made an emergency stop, resulting in the rear car and the one on which appellee was riding being jerked loose from the remaining cars, the air hose connecting said cars being torn loose, the air in the hose caused to rush therefrom and throw sand and rust from said hose or the ground into appellee's eyes. The second allegation of negligence charges that shortly thereafter, and at another time and place, while the train was going through the station of Pinevita, and while appellee was on the top of the cars, and while going toward the engine of the train, the engineer or fireman sanded out the flues of the engine, whereby particles of hot sand coming therefrom were thrown into appellee's face and into his eye, thereby causing injury. Plaintiff alleged the complete loss of the sight of his right eye. Appellant answered denying each allegation of negligence, and pleaded assumed risk and contributory negligence. The trial resulted in a verdict and judgment for appellee.

In the eleventh paragraph of the trial court's general charge, the jury are instructed as follows:

"If you believe from a preponderance of the evidence that on or about October 22, 1913, the plaintiff was directed by the defendant to go on one of defendant's freight trains as a brakeman, and did go on said train in such capacity from Winslow, Ariz., to Seligman, Ariz., and that after leaving Flagstaff, but before reaching Seligman, and shortly before reaching the station of Pinevita, the plaintiff got out on the top of the cars in the performance of his duties, under the rules of the defendant, and that, after he had performed his duty on the top of said cars, was going towards the engine, where the rules of the company required him to go, and the engineer or fireman knew that plaintiff was on top of said cars, and that, without any warning or notice to plaintiff, the engineer or fireman proceeded to sand out the pipes or flues, which caused the engine through its smokestack to emit hot sand, and as a result great quantities of hot sand or particles of hot sand were thrown and hurled into plaintiff's face, and into his right eye, and if you believe from the evidence that it was negligence for the engineer or fireman to sand out said flues or pipes under all the circumstances, if they did so sand out said pipes and flues, and that such negligence on the part of the defendant's engineer or fireman, if it was negligence, proximately caused plaintiff's injury, your verdict will be in favor of plaintiff."

The defendant objected to this paragraph of the charge as a basis for negligence, the evidence showing that plaintiff knew that it was his duty to go on top the cars at the time and place he did and take station thereon, and knew that the flues of the engine might be sanded out at any time and place when same, in the judgment of the fireman and engineer, became necessary, and that it was the usual and customary proceeding to sand out said flues or engine at any place or at any time where it appeared to said fireman or engineer to be necessary and proper, and, such being the rule of the company to which plaintiff subscribed and the common, ordinary, and usual practice established by the evidence, plaintiff would have no cause for damage for the doing of it. Defendant under this assignment makes the proposition that negligence cannot be predicated upon the doing of an act by the operatives of a train where such act is necessary in the operation of the train and was done in the usual and customary manner.

The appellant's first and second propositions under this assignment all depend upon the question of fact as to the necessity for sanding out the engine flues at the time they were sanded out, and the appellee's knowledge of the fact of the necessity for so doing. None of the witnesses testified that it was necessary to sand out the flues just at the time and place the evidence shows they were sanded out, or that the appellee knew that a necessity had arisen for them to be sanded out. The evidence shows that it was their duty and the custom for the engineer and fireman to perform that service when, in their judgment, it was necessary to be done, and that appellee knew that such was their duty, and that it was customery for them to perform that duty, but there is no evidence that the appellee, the brakeman, whose duty, under the rules, called him to the place he was, knew that a necessity had arisen or would likely arise for the sanding out engine flues while he was on top of the cars and in a position of danger from the hot sand emitted from the flues when sanded out. We think that to place appellee on top the cars in the discharge of a duty, and then to bring about an extra risk to him on the ground of necessity, the evidence should be at least satisfying that the necessity had arisen, and that appellee knew of it. It would not, it seems to us, be sufficient to simply show that it was convenient to sand out the flues at that time, but that an actual necessity had arisen.

[1] Appellant's first two propositions under this assignment are clearly without the evidence necessary to invoke the legal propositions contained in them. The evidence goes no further than to show the duty to sand out the engines when necessary, and that such was the custom. The witnesses Draper and Sawyer, the engineer and fireman on the train, did not even remember sanding out the engine at the time and place appellee was injured, and made no statement to the effect that it was necessary to then do so, and that the engine flues were then sanded out because of the necessity. The third proposition under this assignment, it seems to us, is not germain to the assignment, and is here raised for the first time. We think, however, the evidence of the physician that a corneal ulcer, such as he found plaintiff had, could be produced by injury and infection,

would be sufficient to justify the charge. The assignment is overruled.

[2] Objection was made and a proper bill of exception taken to the sixth paragraph of the court's general charge submitting to the jury the question of negligence in applying the emergency air under the circumstances stated in the charge, thereby causing the train to come to a sudden stop, and the air hose to part, and the appellee, in anticipation of and fearing the shock about to result from the application of the air brakes, jumped or stepped down from the ladder on the car, when the air hose came apart, and the air released with force, with the result that particles of rust, dirt, or other foreign substances in the air brakes or train line pipes or dust or sand from the earth were discharged or blown into appellee's face and into his right eye, thereby causing injury. Appellant claims that it is error for the court to submit such issue of negligence, where the strongest evidence upon such issue showed that there was an occurrence which could have been caused by an emergency application of the brakes, where the party in charge of the brakes testified that no such application was made, where the undisputed evidence showed that the same result could have been due to other causes, and where appellee, the only witness for himself, testified he did not know that the engineer had made the emergency application; that a person, though guilty of a negligent act, is only responsible for consequences proximately caused, and which could reasonably have been foreseen; that it would be requiring an engineer to be more than human to hold that in applying the brakes to his train he could foresee that a brakeman would descend from the car, the drawbar be pulled out, the hose be broken, and thereby foreign substances be thrown into the eyes of a person standing near. It would extend this opinion to too great length to quote the evidence on the facts testified to and submitted by the court in his charge on this assignment of negligence. The only controversy on the sufficiency of the evidence on the facts submitted arises on the question as to whether the engineer applied the emergency air. Appellant testified that:

He gave the engineer the easy signal; that is, the ordinary stop. "He [the engineer] stopped all at once, and the air went into the emergency, and it caused the car I was riding on to pull the drawbar out of that car. When you give a signal which is known as the 'dynamite' signal, as the boys call it, you jump out and commence waving your hands, meaning for you to stop right there, which is sometimes referred to by railroad men as a washout or dynamite signal. Now, I gave this signal (indicating the easy signal), and he stopped the train, and the air went into the emergency. * * * I do not know that he threw the air into the emergency, but I know the air went into the emergency, because I could hear it and tell what it was. * * * You can hear the application of the air, and I heard it. * * * Yes; I say the air was put in emergency; I don't know whether the engineer applied the air or not. It might

have been caused from something else. It could have been caused by a defective triple valve. We hadn't had any trouble on this trip with the triple valve; it had worked all right."

The engineer, Bressford, testified that he received the ordinary stop signal and applied the air in the usual manner by making a service application of the air, drawing off the air from the train line, and stopping the train. Other witnesses testified to the use made of air in the air and train line. The use made of the air and its effect upon the train were questions of fact for the jury to determine. The issues of fact submitted in the paragraph of the charge were pleaded. We think the evidence was sufficient to submit to the jury the question as to whether an emergency application of the air was made, its effect upon the train, and whether the facts found constituted negligence and proximate cause. The case was submitted upon two issues of negligence, and the jury returned a general verdict in favor of the appellee. The evidence shows that the appellee's eye was partly injured on each of the two occasions. The assignment is overruled.

[3] Appellant's third, fourth, and fifth assignments complain of the failure of the court to submit special charges presented Objection is made to a consideration of these assignments because the bills of exceptions taken to the action of the trial court in refusing to submit the charges do not show that the charges were prepared and presented to the court and submitted to opposing counsel for examination and objection within a reasonable time after the charge of the court was given to the parties or their attorneys for examination, as required by articles 1973, 1974, and 2061, Rev. St., as amended by chapter 59, Acts 33d Leg. The articles of the statute referred to require that this be done; otherwise the ruling of the court in refusing to give the requested charge is regarded as approved. As said by the sixth Court of Appeals in St. Louis Southwestern Railway Co. v. Wadsack, 166 S. W. 42, the effect of the amendments to the articles referred to is to place the rulings of the trial court in giving or refusing charges in the same category with other rulings not appearing of record as to the formalities required for their consideration on appeal, and appellate courts can now no more review the action of the trial court in giving or refusing charges than they can the rulings admitting or excluding testimony without proper bills of exception. Gulf, T. & W. Ry. Co. v. Dickey, 171 S. W. 1097; Ratliff v. Wakefield, etc., Co., 172 S. W. 198; Eldridge v. Railway Co., 169 S. W. 375; Floegge v. Meyer, 172 S. W. 194. This court so held in Atchison, Topeka & Santa Fé Railway Co. v. Skeen, 174 S. W. 655. For reasons stated, assignments 3, 4, and 5 cannot be considered.

[4] On trial of the case plaintiff's attorney in his argument to the jury used the following language:

"That, while I have to treat this case in a very general sort of way, I hope I shall not treat the same as superficially as the defendant treated it in the beginning at Winslow, Ariz.; that I will not treat it as superficially as the defendant's doctors did treat it, as Dr. Simpson said he only made a superficial examination of the eye at Winslow, Ariz., and I am not going to make any such superficial treatment of the case."

Appellant's sixth assignment complains of this remark. The trial court, in approving the bill of exception taken, explains that the remarks of counsel were used in connection with the testimony of Dr. Simpson. Dr. Simpson was a witness for defendant. The witness said that he lived in Winslow, Ariz.; was a consulting physician for the defendant's hospital; does not claim to be an eye specialist; saw plaintiff when he came for treatment; his eye was diseased—badly inflamed. Witness examined plaintiff's eye superficially, found it inflamed, discovered that some one had seen the eye before witness had, and had either taken out some foreign body or attempted to; advised plaintiff to go to the hospital in Los Angeles for certain treatment; and offered to get him the necessary admission, transportation, etc. What we have stated from Dr. Simpson's evidence is not all he said, but enough to show the reference in the remark. One of the issues presented by the pleadings and submitted to the jury by the court on the trial was a charge of negligence in the treatment of plaintiff's eye. No reversible error is shown, and the assignment is overruled.

[5] Appellant complains that the verdict and judgment for $10,000 is excessive. The evidence shows that prior to the injury plaintiff was in good health, 38 years of age, had been in the railroad service many years, and in the train service as brakeman since 1907, and earning from $125 to $145 per month. The evidence showed that plaintiff suffered intensely from the effect of the injury to his eye, and sustained a loss of the sight of his right eye, with a minimum of danger as to the left eye. We cannot say that the verdict is so large as to show an abuse of the discretion left to the jury to fix the amount of the loss; nor does the damage awarded indicate passion or prejudice or an improper conception of the measure of damages on the part of the jury.

The case is affirmed.

## On Rehearing.

Appellant complains of the action of this court in refusing to consider its third, fourth, and fifth assignments of error over objections made that the bills of exception taken to the action of the court in refusing to submit the charges do not show that the special charges were prepared and presented to the court and submitted to opposing counsel for examination and objection within a reasonable time after the charge is given to the parties or their attorneys for examination, and says:

"We do not believe that any court has gone as far in refusing to consider assignments as was done in this case."

Counsel, in preparing the motion, has evidently overlooked article 1973, Revised Statutes, as amended in 1913, referred to in the opinion, the latter part of which reads as follows:

"Such instructions [prepared by counsel after receiving the court's general charge]. shall be prepared and presented to the court and submitted to opposing counsel for examination and objection within a reasonable time after the charge is given to the parties or their attorneys for examination."

The Court of Civil Appeals for the Third District, after commenting on this provision of the law, in Floegge v. Meyer et al., 172 S. W. 194, said:

"The bill, we think, is fatally defective in failing to show that the special charge was requested before the charge of the court was read to the jury, and is further defective in failing to show that such special charge was submitted to opposing counsel for their consideration, as above indicated, for which reason this assignment cannot be considered by us."

The Fourth Court of Civil Appeals, in International & G. N. Ry. Co. v. Jones, 175 S. W. 488, said:

"There is nothing in the bill of exceptions indicating that the issues were ever submitted to counsel for appellees, and the assignment could not be considered."

The motion is overruled.