## TEXAS & N. O. R. CO. et al. v. THOMPSON. (No. 9007.)

Court of Civil Appeals of Texas. Galveston. Nov. 30, 1927.

Rehearing Denied Jan. 24, 1928.

**1. Trial ⬅3—Fraud in obtaining release for personal injuries held not determinable by preliminary verdict prior to development of entire case.**

In action by switchman for injuries sustained while attempting to board moving switch engine, where railroad company pleaded release secured from switchman, who set up defense that release was fraudulently procured, and company claimed entire case should not have been developed, but that pleas affecting release should have been determined by jury first, *held*, that release was subject to same rule as is applied to all special defensive pleas and preliminary verdict was not granted.

**2. Evidence ⬅434(15)—Release by injured switchman relieving railroad from liability may be shown by parol to have been secured by false representations.**

Release given by switchman injured while attempting to board switch engine which relieved company from liability may be shown by parol evidence to have been procured by false representations.

**3. Release ⬅57(2)—Evidence held to support jury's finding that promise of re-employment, given to secure release from injured switchman was fraudulent and relied upon.**

Evidence *held* sufficient to support jury's finding that promise that switchman be re-employed, given in consideration of his executing release relieving railroad company from liability for injuries which he sustained while attempting to board switch engine, was fraudulent and relied upon.

**4. Master and servant ⬅137(3)—Foreman's ordering men to board moving switch engine on dark rainy night held actionable negligence.**

Foreman's ordering group of employees of railroad company standing near railroad track on dark rainy night, to get on slowly moving switch engine *held* actionable negligence, where switchman was injured in scramble to get on engine.

**5. Trial ⬅350(4)—Refusal to submit issue of switchman's knowledge of contents of release to jury held not error, question being whether he executed it because of promise of re-employment.**

Where switchman was injured while attempting to board moving switch engine, refusal of railroad company's request to submit issue as to whether switchman, signing release offered in evidence, knew conditions of release *held* not error, since finding upon such issue would not be finding upon ultimate controlling fact; question being, Was release induced by promise of employment, not employee's knowledge of contents?

Lane, J., dissenting.

Appeal from District Court, Harris County; W. E. Monteith, Judge.

Suit by Tommy L. Thompson against the Texas & New Orleans Railroad Company and others. Judgment for plaintiff against all defendants except the San Antonio & Arkansas Pass Railway Company, and in favor of the last-named defendant. From this judgment, defendants against whom judgment was rendered appeal. Affirmed.

Garrison & Watson, Baker, Botts, Parker & Garwood, and John T. Garrison, all of Houston, for appellants.

Ewing Werlein, of Houston, for appellee.

LANE, J. This suit was brought by appellee, Tommy L. Thompson, against the Texas & New Orleans Railroad Company, the Galveston Harrisburg & San Antonio Railway Company, and other railway companies operated by the Southern Pacific Company in the state of Texas, known as the Sunset Lines, to recover damages in the sum of $25,000 for personal injuries which he alleged he had suffered by reason of negligence of the agents and servants of said railway companies.

For cause of action the plaintiff alleged substantially that on the night of the 30th day of December, 1925, a dark and rainy night, he was a switchman in the employ of said railway companies at Houston, Tex.; that on said dark and rainy night he and a crew of men under employment of said companies were in discharge of their duties as such employees; that while he and one McDonald, another switchman, were standing

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

together near the railroad track a switch engine approached them, and that one Pardon, foreman of the switching crew, without signaling for the engine to stop, as according to custom he should have done, acting within the scope of his authority, ordered him· and McDonald to get aboard of said switch engine; that as the engine moved forward the foreman took the near footboard of the engine, and left him and McDonald to hasten around the side of the engine to get aboard or be left miles from their destination; that it was his bounden duty to obey said order or suffer a discharge for disobedience of orders of his foreman; that in obedience to the orders of their foreman, he and McDonald hastened around the engine to catch up with it, and that in their attempt to get on the footboard thereof, as was necessary to do to get on the engine, his left foot was placed on the footboard and his left hand grasped hold of the engine so as to pull himself up; that while in such position McDonald, who came in behind him, accidentally stepped on his right foot and thereby caused him to slip, fall, and be thrown against the engine and to suffer the injuries complained of; that by reason of his fall he was maimed, wounded, bruised, and injured in his head, neck, eyes, and ears, etc.

The negligence alleged, by reason of which he suffered his injuries, was as follows: ' (1) The act of the foreman, Pardon, in negligently ordering him to board the switch engine without causing the same to be stopped, and while it was in motion; (2) that Switchman McDonald, while acting within the scope of his employment, negligently stepped on plaintiff's foot and thereby caused plaintiff to fall against the engine.

Defendants answered by general demurrer, general denial, and by especially pleading substantially, that on or about the 1st day of ᴶebruary, 1926, they made a full, final, and complete settlement with the plaintiff for any and all claims, demands, and causes of action which had or might accrue to him by reason of the injuries complained of; that in said settlement defendants paid the plaintiff $200.00 in cash; that for and in consideration of said payment the plaintiff executed and delivered to defendant the following release:

"Houston, Tex., February 1, 1926.

Texas & New Orleans Railroad Company, to T. L. Thompson, Dr. Houston, Tex.

"Registered in February, 1926.

"Release in Full.

"In consideration of the sum of two hundred and no/100 dollars ($200) to me this day paid by T. & N. O. R. R. Co., I hereby release said railroad from all claims, demands, and causes of action against it which have accrued, or may hereafter accrue, to me for all damages of every natᴜre whatsoever received in, and resulting from, an acident at or near Houston, Tex., on or about December 30, 1925, in which I, T. L. Thompson, was injured while employed in yards as switchman and while on duty. Said sum is accepted by the undersigned in settlement for all damages, injuries, and disabilities which may hereafter result from said accident, as well as for those now known to have been caused thereby.

"It is expressly understood and agreed that said sum is paid and accepted not only for time and wages lost, expenses incurred, and property damaged and destroyed, but also in full and final settlement of all claims of every nature, caused by said accident.

"To secure this settlement and the payment of said sum I hereby represent to said railroad that I am 21 years of age, and that I rely wholly upon my own judgment, belief, and knowledge of the nature, extent, and duration of said injuries, disabilities, and damages, and that no representations or statements about them, made by said railroad's surgeons or agents, have influenced me in making, nor induced me to make, this settlement.

"No promise of employment nor other agreement not herein expressed has been made by said railroad, nor by any of its officers, agents, or employees.

"Witness my hand at Houston, Tex., Feb. 1, 1926.

"[Signed] T. L. Thompson.

"Witness: T. W. Guarino.
"A. L. Williams.

"Calculations correct:
"V. Perryman.

"I hereby certify that the above account is correct. H. L. Davis, Claim Agent.

"Examined by L. Johnson.

"Approved: W. E. Douglass, General Claim Agent.

"Approved: Baker, Botts, Parker & Garwood, General Attorneys.

"Approved for payment: G. R. Ryan, for the auditor."

"The State of Texas, County of Harris:

"Before me, the undersigned authority, in and for said state and county, on this day personally appeared T. L. Thompson, known to me to be the person whose name is subscribed to the within instrument, and, being by me first duly sworn on oath, stated that he executed the same for the purposes and consideration therein expressed; that he has read it, fully understands its meaning and effect, knows it is an unconditional release in full, and that he voluntarily executed it as such.

"Given under my hand and seal of office this 1st day of February, 1926. F. Cliff Allen, Jr., Notary Public Harris County, Tex."

"The State of Texas, County of Harris:

"We, the undersigned, being first duly sworn, say on oath, each for himself, that all of the within instrument was read aloud by F. Cliff Allen, Jr., to T. L. Thompson in our presence and hearing; and that he stated to us that he fully understood its meaning and effect, knew that it was an unconditional release in full, and voluntarily executed it for the purposes and consideration therein expressed.

"T. W. Guarino,
"A. L. Williams.

"Subscribed and sworn to before me by said T. W. Guarino and A. L. Williams, of Harris county, Tex., February 1, 1926. F. Cliff Allen, Jr., Notary Public, Harris County, Tex."

By supplemental petition, plaintiff denied generally the allegations of the defendants' answer, and, pleading specially, alleged that he ought not to be precluded from recovery by reason of the release pleaded by defendants, in that:

The same "was obtained by fraud and was invalid; that the claim agent of the defendants, at the time of the execution of the release, induced the plaintiff to execute the same by promising and representing to the plaintiff that if he would execute such release he would get employment from the defendant, or defendants, as a switchman, and be promptly put back in the employment as such, which employment he held at the time of his injury, which representations and promises plaintiff believed were made in good faith and with the intention of being performed and kept, and upon which he relied, and was therefore induced to execute said release as he would not otherwise have done; that said representations by the claim agent were not made in good faith or with the intention of being performed, but with the design of misleading plaintiff and inducing him to execute such release as he would not otherwise have done; that the plaintiff properly reported for service in response to a notice placed upon the board by the defendants, or some of them; and that the defendant, or defendants, by its, or their, agent, discharged plaintiff from the service and have ever since refused or failed to give him any employment, or to put him back in the service as promised."

Defendants specially excepted to the plaintiff's plea made by his supplemental petition, and alleged that plaintiff could not recover under such plea, in that he did not in his original petition bring suit to set aside the release executed by him, but thereby brought a straight suit to recover damages for personal injuries, and he could not maintain his original cause of action until he had first brought suit to set aside said release; that at the time the original suit was filed plaintiff and his attorneys knew of the existence of said release, and knew that said release was binding upon the plaintiff unless set aside in a judicial proceeding, and that plaintiff ought not to maintain his suit until the issue as to the validity of the release is fully heard and maintained.

These exceptions were overruled. The case was submitted to the jury on special issues. In response to the special issues submitted, the jury found:

(1) That the claim agent, in obtaining the release in evidence, promised the plaintiff, in substance, that he would get employment as a switchman the same as he had before the alleged injury, and that such promise was an inducement to plaintiff to execute the release, and that at the time the lease was executed plaintiff believed that the claim agent intended the promise of employment to be performed, and that plaintiff was induced, under such belief, to execute the release, relying upon such promise being performed in good faith, and that the alleged promise of employment was not made with the intention of being performed.

(2) That the foreman, Pardon, ordered and directed plaintiff, in substance, to get aboard the engine while it was in motion, without causing the same to be stopped, and that in view of the attending circumstances such act of Pardon was negligence, and that such negligence was the proximate cause of the injury.

(3) That the employee McDonald, a fellow brakeman, stepped onto plaintiff's foot while plaintiff was attempting to get aboard the engine on the occasion in question, and that the stepping on plaintiff's foot by the switchman McDonald was negligence, and that such negligence was the proximate cause of the injury.

The jury found that the plaintiff was damaged in the sum of $2,500.

On the answers of the jury to the issues submitted, judgment was rendered in favor of the plaintiff against the Texas & New Orleans Railroad Company, the Galveston, Harrisburg & San Antonio Railway Company, Houston & Texas Central Railway Company, and the Houston, East & West Texas Railway Company for the sum of $2,300. Judgment was also rendered in favor of the San Antonio & Aransas Pass Railway Company, one of the defendants.

From the judgment rendered, the railway companies against whom judgment was rendered have appealed.

By the thirteenth and last proposition of appellants, which we shall first dispose of, they insist that as the defendants had pleaded a release duly executed and sworn to, the court erred in permitting the plaintiff to develop his entire case relating to negligence of the defendants and the extent of plaintiff's injuries before having the jury determine whether or not the release was procured by fraud.

[1] We overrule the contention of appellant above stated. The execution and delivery of the release by the plaintiff was specially pleaded by defendants as a defense to plaintiff's suit. We think such special defensive plea is subject to the same rule as is applied to all special defensive pleas, such as contributory negligence, assumed risk, estoppel, etc. It would, indeed, be an unusual and novel proceeding to have preliminary verdict of the jury on such issues and thereafter proceed to a hearing of evidence which the plaintiff might offer in support of his cause of action. This court will not by its decison attempt to establish any such unusual rule.

[2] Appellants' second, third, and fourth propositions are substantially that all preliminary negotiations which led up to the execution of the release contract, above set out, are deemed to have been merged in said contract, and the written contract must be

taken as expressing the full terms of the release agreement, and oral evidence tending to vary or contradict the terms of such written contract is inadmissible, and therefore the trial court erred in admitting evidence tending to show that appellee, Thompson, executed the release relying upon a statement of the claim agent of appellants, prior to the execution of the release contract, that he, Thompson, would be re-employed by appellant if he would sign the release.

Appellee recognizes the general rule that all prior and contemporaneous negotiations and communications are merged in a written contract, and that such written contract cannot be varied by parol, but he asserts that it is equally true that, where alleged, fraudulent representations inducing the execution of such written contract may be shown by parol.

Atchison, Topeka & Santa Fé Ry. Co. v. Skeen (Tex. Civ. App.) 174 S. W. 655, decided by the El Paso court, in which a writ of error was refused by the Supreme Court, is a case in which the defendant railway company pleaded as a defense a release in terms substantially the same as the one under consideration in the present case. In that case the court admitted evidence to show that prior to the execution of the release contract, the plaintiff had been promised re-employment by the claim agent of the railway company if he would execute the release. We feel constrained to follow the rule established by the opinion cited, as well as that, to the same effect, established in Rapid Transit Ry. Co. v. Smith, 98 Tex. 555, 86 S. W. 322, and Chicago, T. & M. C. Ry. Co. v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39.

Our Supreme Court in Rapid Transit Co. v. Smith, supra, said:

"If the agent of the company, as an inducement to the execution of the release, promised the plaintiff and induced him to believe that if he would execute the release he would get employment from the company as a motorman, and if such promise was not made in good faith, that is to say, if such agent had no intention of giving him such employment, then under the rule established in this court, the release was voidable and subject to be set aside for fraud. Chicago, T. & M. C. Ry. Co. v. Titterington, 84 Tex. 218 [19 S. W. 472, 31 Am. St. Rep. 39]. In the case cited, the court says: 'If the railway company at the time it made the representations and promises before mentioned to the plaintiffs, did so with the design of cheating and deceiving the plaintiffs, and had no intention at the time of performing the promises, but used them merely as false pretenses to induce the plaintiffs to execute the deed, and if its conduct did have that effect, then we think that such acts and declarations, coupled with its subsequent utter failure and refusal to perform the promises or assurances, would amount to such actual fraud as would authorize the plaintiffs to have the contract rescinded and the land restored to them.'"

Appellants make the further contention that no promise of re-employment was made to appellee by their claim agent at any time, but that if it be conceded that such promise was made, the findings of the jury that it was fraudulently made as an inducement to the plaintiff to execute the release, and that believing that such promise was made in good faith plaintiff executed the release, which he would not have done had he not so believed, are so against the great weight and preponderance of the evidence that such findings nor either of them, nor the judgment rendered thereupon, should be permitted to stand.

[3] We are unanimous in the agreement that there was sufficient evidence to support the jury's finding that, in a preliminary negotiation and communicaton between appellee and the claim agent of appellants, had prior to the execution of the release, said agent stated to appellee, substantially, that as a consideration for the execution of a release for all damages suffered by him in the accident involved, he would be paid $200 and be re-employed at the same job he had before his injury. We also agree, conceding that such promise was made, that the evidence was sufficient to support the jury's finding that such promise was not made in good faith. Atchison, T. & S. F. Ry. Co. v. Skeen (Tex. Civ. App.) 174 S. W. 655.

The claim agent, who, it is alleged, made the promise of re-employment, testified that he made no such promise, and he and other witnesses for defendants testified that he had no authority to employ any one for any of the defendants; conceding that the promise was made, preliminary to the preparation of the contract which was thereafter handed to appellee for execution and which he did thereafter execute, the evidence shows, we think, that the promisor did not intend to bind the defendants to re-employ appellee. The facts stated, we think, were sufficient to support the jury's finding that the promise of re-employment was not made in good faith.

The majority of this court is of opinion that there was sufficient evidence to support the further finding of the jury that when appellee executed the release he was relying upon the promise of re-employment, and that he was thereby induced to execute said release, and that had no such promise been made he would not have executed it. To such conclusion the writer cannot give his assent. The testimony upon which the majority base their conclusion that the evidence was sufficient to support the finding of the jury that appellee was induced to execute the release by reason of the promise of re-employment is that of appellee alone. Relative to the issue last mentioned, appellee testified, in effect, that after the claim agent had made him a promise of re-employment as a part of the consideration for the execution of a release, which by its terms released the de-

fendants from all claims of every kind caused by the accident in question, he was handed a paper purporting to be such a release by defendants' claim agent for execution; that he left the office and went with such paper to the office of F. Cliff Allen, a notary public of his own selection, and there in the presence of such notary and two subscribing witnesses, who were requested to witness his execution of the paper, he signed, swore to, and acknowledged that he had executed the same for the purposes and consideration therein expressed, but that at the time he did so he had not read the paper; that it had not been read or explained to him; that he had no knowledge that it contained a clause stating that "no promise of employment nor other agreement, not herein expressed, has been made by said railroad, nor by any of its officers, agents, or employees;" that he was induced to execute the release by reason of the promise of re-employment made by defendant's claim agent; and that he would not have executed the same had such promise not been made, or had he known that said paper contained the clause stating that no promise of employment had been made to him.

Having conceded that there was sufficient evidence to support the finding of the jury that the promise of re-employment was made as contended by appellee, and also conceding that there was evidence sufficient to support the finding of the jury that the promise so made was made without any intention to comply with it, the writer is nevertheless of opinion that the overwhelming weight and preponderance of the evidence shows that appellee read the release before he signed, swore to, and acknowledged it, or that the same was read to and fully explained to him before he executed it, and that at the time of the execution he fully understood its contents; that he accepted the same with such knowledge; and that thereafter he accepted the $200 paid to him in full settlement of his claim against the defendants. Attached to the executed release is the affidavit of T. W. Guarino and A. L. Williams, the subscribing witnesses, by which they stated under oath that all of the release was read aloud to appellee by F. Cliff Allen, Jr., in their presence and hearing; that appellee stated to them that he fully understood its meaning and effect; that he knew that said release was an unconditional release in full, and that he voluntarily executed it for the *purposes and consideration therein expressed.* Appellee testified, on cross-examination, that he was advised by his attorney that he could set aside the release if he would testify that the railroad company was to give him employment.

The overwhelming weight of the evidence shows that appellee knew that it was stated in the release that he was not promised employment as a part consideration for its execution. This being true, it is inconceivable that he was induced to sign such instrument by reason of the promise of re-employment, as contended by him.

It should be held that a person who has signed, sworn to, aand delivered to his adversary an instrument in writing, wherein it is stated that to secure a settlement of a controversy getween himself and his adversary he has accepted a certain recited sum of money in full settlement, that in executing such instrument he was relying wholly upon his own judgment as to his rights in the premises, and that neither his adversary nor any agent of his had made any representations which influenced him to make such settlement, and that no promise of employment, nor other agreement not expressed in the instrument, had been made to him by his adversary, nor any of his agents, and he thereafter goes upon the stand and upon his oath asserts that such statements are false, deserves to be discredited and his testimony should be given but little, if any, probative force.

The testimony of appellee in the present case to the effect that he did not know the contents of the release which he signed and swore to is inconsistent with and repugnant to every fact disclosed by the written release, the certificate of the notary thereto, and the affidavit of the subscribing witnesses thereto, and the writer is of opinion that it should be considered as of but little, if any, probative force. A witness who impeaches his own acts is usually unworthy of belief.

For the reasons stated, the writer thinks that the finding of the jury that appellee was induced to execute the release by reason of the promise of re-employment is so against the great weight and preponderance of the evidence as to be clearly wrong, and that such finding was the result of bias or prejudice, or some other improper motive, and, so believing, he thinks the judgment of the trial court should be reversed and the cause remanded for another trial.

Appellants also, as cause for reversal, contend that there was no evidence sufficient to support a finding that they, or any of them, were guilty of actionable negligence the proximate cause of appellee's injury.

[4] We are not prepared to sustain appellants' contention. The evidence shows that a group of men, employees of appellants, including one Pardon, a vice principal, were on a dark, rainy night standing near the railroad track; that as said men were to move from their place of labor to another, they were ordered by Pardon, their foreman, to get upon the footboards of a slowly moving switch engine, which he had signaled to move forward; that said footboards were only about two feet in length, one on each side of the engine; that Pardon and one of the men

got on the engine as it passed the group, and appellee, followed by Switchman McDonald, ran behind and around the engine to get on the step on the off side thereof; that in the scramble to get on the moving engine, McDonald stepped on one of appellee's feet as he had the other on the footboard, and thereby caused appellee to fall and be injured. While it might be that under favorable weather conditions the foreman would not be guilty of actionable negligence in ordering his men to board a moving engine, we are not prepared to hold under the facts shown that the finding of the jury that appellants' servants were guilty of negligence resulting in appellee's injuries was error.

It was a controverted issue as to whether appellee, Thompson, knew, at the time he executed the release and at the time he returned the same to Claim Agent Davis, the terms and conditions recited in the release. The court did not submit such issue by his charge, and appellants timely requested the court to submit the following issue:

"Did the plaintiff, Tommy L. Thompson, at the time he signed and swore to the release offered in evidence, and at the time he returned same to Claim Agent Davis, know of the terms and conditions of said release?"

The court refused to submit the issue, and appellants contend that such refusal constitutes reversible error.

[5] While we think the evidence as to whether or not appellee knew the contents of the release before he executed it and returned it to Davis and got the $200 named therein as full consideration was pertinent and admissible, it was only so as it affected the credibility of appellee's statement that the preliminary promise of re-employment induced him to execute the release and accept the $200 from Claim Agent Davis. The finding of the jury upon such requested issue would not be a finding upon an ultimate or controlling fact. The important disputed fact relative to the release contract is not whether appellee knew its contents at the times mentioned in the requested charge, but is, Was appellee induced to execute the same by reason of a promise of employment?

We have examined and considered the remaining assignments of appellants and overrule them without detailed discussion.

The majority having reached the conclusion that the judgment should be affirmed, it is so ordered. The writer, however, dissents from such order for the reasons he has hereinbefore expressed.

Affirmed.

### On Motion for Rehearing.

I dissented from the action of the majority in affirming the judgment of the trial court in our original opinion, upon the conclusion that the finding of the jury that the promise of employment induced appellee to execute the release was so against the great weight and preponderance of the evidence as to be clearly wrong. Since the original opinion has been filed, and upon motion for rehearing, I have reached the conclusion that the judgment should also be reversed in that the finding that appellant was guilty of negligence, the proximate cause of appellee's injury, is also so against the weight and preponderance of the evidence as to be clearly wrong. The only evidence tending to show such negligence was the testimony of appellee, who, I think, from all the evidence, is unworthy of belief, and which testimony was disputed by the overwhelming weight of the evidence.