## AVERY CO. OF TEXAS v. HARRISON CO.* (No. 663.)

(Court of Civil Appeals of Texas. Beaumont. July 14, 1923. Rehearing Denied Oct. 10, 1923.)

**I. Pleading ☞111—Plea of privilege held to place burden of proof on defendant to establish it.**

Where, at the time defendant interposed plea of privilege, the statute did not require plaintiff to file a controverting affidavit, the burden was on defendant to establish its plea.

**2. Pleading ☞110—Plea of privilege passed from term to term, by agreement of parties, preserved original rights of both parties.**

Where a plea of privilege by agreement of the parties was passed from term to term without prejudice, the agreement preserved all rights of plaintiffs which they had when the plea was filed, as well as the right of defendant to have the plea considered at the time fixed by the agreement.

**3. Pleading ☞412—Defendant held to waive right to require filing of controverting plea to his plea of privilege.**

If plaintiffs were required to file a controverting plea in answer to the plea of privilege, defendant *held* to have waived right to require filing of such plea, where it, upon the hearing of the plea, permitted, without objection, the introduction of evidence pro and con on the issue.

**4. Statutes ☞267(2)—Statute relative to answering plea of privilege, not in force when plea filed, held not in force at disposal of case.**

Where the statute requiring the filing, by plaintiff of a controverting plea in answer to defendant's plea of privilege was not in force at the time defendant's plea of privilege was filed, the statute did not apply, even though it was the law at the time the case was finally disposed of.

**5. Corporations ☞503(2)—Plea of privilege interposed by private corporation held properly overruled on merits.**

In an action instituted in S. county, plea of privilege *held* properly overruled on the merits, where defendant was a private corporation, and plaintiff's cause of action against it was founded on defendant's alleged wrongful and fraudulent acts and representations, which occurred in S. county.

**6. Fraud ☞59(1)—Loss of profit measure of damages to purchaser of defective tractor.**

Where plaintiffs would have realized a profit out of an oat crop lost by reason of a defective tractor and plow purchased from defendant, who made fraudulent representations that the tractor and plow would do the work, the profit lost was the measure of damages.

**7. Fraud ☞58(1)—Evidence held to show loss of crop by defective tractor, misrepresented by seller.**

Evidence *held* to show that plaintiffs sustained a loss of profit out of an oat crop on

land which they were unable to plant because of a defective tractor and plow purchased from defendant, and that the loss was occasioned by reason of the fraudulent representations on which plaintiffs relied.

**8. Fraud ☞59(3)—Measure of damages.**

Ordinarily the correct measure of damages for the seller's fraud is the difference between the value of the article when purchased and the price paid.

**9. Evidence ☞113(2)—Worth of article year old does not prove its value when new.**

Evidence of value of machinery after it was a year old, *held* not to prove what its value was when it was new.

**10. Fraud ☞59(1)—Damages for loss of crop held too remote.**

Damages for loss of an oat crop that would have been planted and harvested during a season but for the defects in the tractor and plow purchased from defendant two years before *held* too remote.

**11. Fraud ☞59(1)—Buyer's special damages for loss of crop held not recoverable.**

Buyer's special damages for the loss of an oat crop for a year, alleged to have been caused by failure of tractor and plow to work, *held* not recoverable in an action against the seller for false representations, where defendant had no notice of the intent to plant crop that year.

**12. Damages ☞62(1)—Buyer discovering defect in tractor held not justified in failing to procure other means to break land.**

Where plaintiffs, long before time for planting, had discovered that the tractor and plows purchased from defendant could not possibly do the work, plaintiffs who complained of fraudulent representations inducing the purchase were not justified in wholly failing to make any effort to procure other means for breaking and planting their land, if they desired to do so for that year.

**13. Evidence ☞434(11)—Buyers held entitled to show signing of contract was procured by fraud.**

Buyers *held* entitled to show that they were induced by seller's fraud to execute the contract, notwithstanding that if the written contract could be enforced, plaintiffs could not recover, and, where they proved such fraud, the provisions of the contract were not available as a defense.

**14. Partnership ☞258(11)—Where surviving partners sue as such, judgment should be in their favor and not in firm name.**

Where plaintiffs brought an action as surviving partners of the H. Company, the judgment should have been in their favor as such surviving partners, and not in favor of the H. Company.

Appeal from District Court, San Augustine County; J. T. Adams, Judge.

Action by the surviving partners of the Harrison Company against the Avery Company of Texas. Judgment for plaintiff and defendant appeals. Affirmed as modified.

Burgess, Burgess, Chrestman & Brundidge, of Dallas, for appellant.

W. T. Davis, of San Augustine, for appellee.

HIGHTOWER, C. J. This is a suit brought by G. J. Harrison and E. F. Harrison, surviving partners of the firm of the Harrison Company, to recover damages, claimed to have been sustained in consequence of fraudulent representations and statements made to the plaintiffs touching the suitableness, efficiency, etc., of a tractor and its attachments manufactured by the defendant.

The suit was filed in the district court of San Augustine county, December 16, 1916. On January 25, 1917, defendant filed a plea of privilege, which was in full compliance with the statute on the subject at that time, claiming its domicile in Dallas county. Subject to this plea, defendant answered on the merits; its answer consisting of a general demurrer, numerous special exceptions, a general denial, and other special defensive pleas.

The plea of privilege, after so long a time, was overruled, as were also the general demurrer and all special exceptions, and the case was tried to the court, and judgment rendered against defendant for the sum of $8,011, and defendant has prosecuted this appeal.

[1] The first assignment of error complains of the overruling of the plea of privilege. This contention is based on the claimed fact that the plaintiffs failed to file a verified plea or controverting affidavit in answer to the plea of privilege. When the suit was filed and the defendant interposed the plea of privilege, there was no necessity for the plaintiffs to file a controverting plea or affidavit, and the burden of proof, under the statute at that time, was on defendant to establish its plea of privilege by proof.

[2] The plea of privilege was not disposed of or presented to the court at the first term after it was filed, but was passed for several terms under an agreement between the parties that it might be passed without prejudice to either party. Upon the trial, which was begun August 9, 1920, the parties in open court made the following agreement:

"The plea of privilege filed by defendant, having heretofore been passed from term to term, without prejudice to the rights of either party concerning the same, is submitted at this term of court, as if filed to this term of court. It is further agreed that plaintiffs may file their plea, controverting the said plea of privilege, at any time during the trial of this case, and before the court has finally passed upon the plea of privilege, and said plea of contest will be considered as in due order, if the said plaintiffs desire so to do."

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[3, 4] Upon the trial the plea of privilege was taken along with the main case, and evidence was heard thereon, and on August 12, 1920, before announcing final judgment on the merits, the court overruled the plea. The defendant excepted to this ruling, and saved a bill to the action of the court, but made no objection, so far as the bill discloses, to the ruling of the court on the ground that plaintiffs had not filed a verified plea or controverting affidavit, and the bill does not show that the defendant objected to the evidence on such issue. We are of the opinion that under such circumstances, the court did not err in refusing to sustain the plea of privilege. The plea, by agreement of the parties, having been passed from term to term without prejudice to the right of either party, we think the agreement between them, as above shown, preserved and protected all the rights of plaintiffs that they had when such plea of privilege was filed, as well as it protected the right of defendant to have the plea considered at the time it was considered, which, as we have stated, was after several terms of the court had expired since the plea was filed. The defendant, by making the agreement stated above, and permitting without objection evidence pro and con' on the issue, waived its right to require plaintiff to file a controverting plea, even if plaintiffs were required to do so. We are further of the opinion that defendant's plea of privilege having been filed at a time when there was no requirement that plaintiff should file a controverting plea or affidavit, the present statute on the subject, although the law at the time the case was finally disposed of, has no application. Barcus v. Case Threshing Machine Co. (Tex. Civ. App.) 209 S. W. 205.

[5] We have discussed this point thus far on the theory that the plaintiffs did not, in fact, file a controverting plea or affidavit, but there is nothing in the record to show that this is true, other than the fact that such a controverting plea or affidavit is not in the transcript. The trial court, in its judgment in connection with the plea, recites:

"* * * 'And the court hearing the evidence on the issue, joined by said plea and answer, in all things overruled defendant's plea of privilege.'"

The bill saved by defendant to this ruling of the court does not negative the fact that a controverting plea or affidavit was filed by the plaintiffs. On the merits, we think the plea was properly overruled, because the defendant is a private corporation, and plaintiffs' cause of action against it is founded on its alleged wrongful and fraudulent acts and representations, which occurred in San Augustine county.

This suit grew out of a contract between the parties, by which the appellees purchased from appellant a tractor and its usual attachments, together with an Avery self-lift five-furrow plow, for which the plaintiffs paid to appellant $670 in cash and executed their note for $670, due October 15, 1915. The note was paid prior to the institution of this suit.

The plaintiffs brought this suit for damages against defendant, alleging that defendant, through its duly authorized agents, made fraudulent representations and statements to plaintiffs as to the quality, suitableness, and efficiency of said tractor and plows to do the work for which the plaintiffs were purchasing them, and that such false and fraudulent statements and representations were made by defendant for the purpose of inducing plaintiffs to purchase the tractor and plows with knowledge on its part of the falsity of such statements and representations, and that the plaintiffs were induced thereby to enter into the written contract between the parties under which the sale and purchase was made, that such false statements and representations were verbally made, but with the intention on the part of defendant of thereby inducing the execution of the contract by plaintiffs, and that but for such false and fraudulent statements and representations, plaintiffs would not have purchased the tractor and plows.

They further alleged that their purpose in making the purchase of the tractor and plows was to use them in the breaking of a 400-acre tract of land in San Augustine county, which they intended to plant to oats, and defendant, through its authorized agents, was fully aware of plaintiffs' purpose and intention in contracting for the tractor and plows, and that defendant, through its agents, was fully apprised of the character of the soil that the tractor and plows were to be used to plow, and that, in fact, one of its duly authorized agents went to San Augustine, before the contract was executed, and was shown the land, and made an examination of it, and was thoroughly familiar with the character of the soil and with plaintiffs' needs in full, and knew what would be required of the tractor and plows in order to meet such need, and that it was after defendant had acquired such knowledge of the character of plaintiffs' land, its soil, etc., that such false and fraudulent representations touching the tractor and plows were made to plaintiffs; that such agent of defendant, on said occasion, after being thoroughly familiar with the character of the plaintiffs' land and the purposes for which they were buying the tractor and plows, falsely stated and represented to plaintiffs that the tractor contracted to be purchased was exactly what plaintiffs needed, and that defendants would guarantee that it would do the work and in all respects meet plaintiffs' requirements.

The evidence in this record relative to the

issue as to whether the contract was induced by fraudulent statements and representations on the part of defendant, through its agents, is quite voluminous, and it would serve no uesful purpose to undertake to discuss it in full. Suffice it to say that the evidence on this point was reasonably sufficient to sustain plaintiffs' pleading in that connection, and to warrant the trial court's finding to that effect.

In a few days after defendant's agent got to San Augustine county and acquainted himself with the character of plaintiffs' land and their needs as to the character of tractor and plows, the plaintiffs went to Beaumont to finally conclude the contract to purchase the tractor and plows, and again defendant, through its duly authorized agent, made similar representations and statements to those made by defendant's agent at San Augustine, and defendant, on that occasion, showed to plaintiffs a tractor which defendant represented had been used about a month or two for hauling purposes, but that no plowing had been done with it, and defendant then represented to plaintiffs that the tractor was practically new, and was as good as new, and would fully perform the work that plaintiffs contemplated using it for. Thereupon, the plaintiffs entered into the written contract to purchase the tractor, which contained certain express warranties and numerous conditions calculated to prevent liability under the warranties. These several conditions, as contained in the contract, were pleaded by defendant in bar of plaintiffs' suit. These numerous conditions contained in the contract need not be here specifically mentioned, and it will suffice to say that they constitute no defense to this action if plaintiffs were induced by the false representation and statements alleged by them to enter into the written contract.

The evidence introduced in favor of the plaintiffs upon the trial was sufficient to show that the tractor was not able to pull the plows and do the work according to plaintiffs' needs, as had been represented by defendant, through its duly authorized agents, and was a failure, as far as breaking plaintiffs' land was concerned. It is true the record reflects that defendant, on several occasions, sent different agents to San Augustine county in an effort to make the tractor do the work that it was represented to be able to perform, and efforts of this character were continued for several months, but it was finally decided by defendant's agent and representative that the tractor and plows furnished were wholly insufficient, and would not do the work required of them.

[6, 7] The evidence in the record sufficiently shows that defendant was apprised, through its agents, of the fact that plaintiffs expected to plant between three and four hundred acres of their land in San Augus-

tine county to oats in the year 1914, and defendant knew that plaintiffs would probably lose their oat crop for that year unless the tractor and plows would do the work required by plaintiffs, and as represented they would do by defendant. As a result of the tractor and plows not being able to do the work according to plaintiffs' requirements, and as they had been represented by defendant, the plaintiffs were unable to plant 200 acres of their land in oats during the year 1914, and thereby were caused to lose what they would have made out of their oat crop on such land during that year. The proof was sufficient to show that this 200 acres of land would have produced not less than 30 bushels of oats per acre, at a net profit to plaintiffs of 50 cents per bushel. Therefore, we hold that the evidence was sufficient to establish that plaintiffs lost $3,000 that they would have made out of their oat crop for the year 1914 had they been enabled to plant the same in 1914, and that this loss was occasioned by reason of the false and fraudulent statements and representations on the part of defendant, as above shown. This, we think, is the proper measure of damages, and is recoverable by plaintiffs, because they, relying on defendant's false statements and representations that the tractor and plows would do the work, consumed several months during the year of 1914 and until after planting time for fall oats had passed, and until after planting time for spring oats had passed in 1915, in attempting to make the tractor and plows do the work as they had been verbally guaranteed to do by defendant, and after such continuous efforts in connection with the assistance of agents furnished by defendant, plaintiffs discovered that the tractor and plows could not do the work as represented by defendant, but it was then too late to use any other means to break their land and plant the same to oats, either in 1914 or 1915, and the crop for that year was a total failure as to 200 acres of land.

[8, 9] The evidence shows that the plaintiffs paid $1,370 for the tractor and plows. Ordinarily, the correct measure of damages would be the difference between the value of the machinery when purchased and the price paid. There is, however, no evidence in the record showing the value of this machinery when it was purchased. There is an agreement in the record that it was of the value of $500 on September 25, 1915, but that does not prove what its value was in July, 1914, the date of the purchase.

[10-12] We think that the claimed damages for an oat crop that would have been planted in the fall of 1915 and harvested in 1916 are too remote, and therefore the damages allowed by the trial court to that extent cannot be upheld. In this connection, we think there was no evidence that defendant was put on notice that plaintiffs expected to plant

any oats in 1915, to be harvested in 1916, and therefore damages for loss of an oat crop for that year, being in the nature of special damages, are not recoverable. Besides, the record shows, practically without dispute, that plaintiffs, long before time for planting oats in the fall of 1915, had discovered that the tractor and plows could not possibly do the work that plaintiffs' land required, and they were not justified in wholly failing to make any effort to procure other means for breaking and planting their land to oats, if they desired to do so for that year.

[13] Able counsel for appellant in this case contend most strenuously that the facts in this case do not warrant a recovery of damages for any amount; they contending that the written contract between the parties must govern, as made, and that under the terms and conditions of the written contract, there could be no recovery by the plaintiffs, and the court should have so determined. If, under the facts of this case, the written contract between the parties could be enforced as made according to its terms, there could be no recovery such as allowed the plaintiffs by the trial court. However, plaintiffs had the right under the law, to show that they were induced by fraud on the part of defendant to enter into the execution of this contract, and this they pleaded and sufficiently proved, and the contract, as written, in consequence of such fraud and practice by defendant, is not available as a defense, and the plaintiffs' measure of damages in such a case is well settled by the decisions of this state. Browning Eng. Co. v. Willett (Tex. Com. App.) 228 S. W. 151; Poutra v. Sapp (Tex. Civ. App.) 181 S. W. 792; J. I. Case, etc., Co. v. Rachal (Tex. Civ. App.) 194 S. W. 418. Under these authorities, the plaintiffs' measure of damages in this case was the value of the oat crop that they would have raised on 200 acres of their land, had they been enabled to plant it in the fall of 1914 or spring of 1915, less the cost of producing the crop.

[14] Appellant has challenged by proper assignment, the form of the judgment in this case. The judgment is that "the Harrison Company" recover, etc. The plaintiffs sue as surviving partners of the firm of the Harrison Company, and the judgment, therefore, should be in their favor as such surviving partners.

All other assignments of error made by appellant have been carefully considered, but we think they show no reversible error, and they are overruled.

The judgment of the lower court which, as we have shown, was for $8,011, will be reformed so as to permit the plaintiffs J. E. Harrison and E. F. Harrison, as surviving partners of the Harrison Company, to have and recover of defendant, Avery Company of Texas, the sum of $3,000, with interest on that amount at the rate of 6 per cent. per annum from August 12, 1920, and as so modified, the trial court's judgment is affirmed.