### SUPER-COLD SOUTHWEST CO. v. WILLIS.

#### No. 13957.

Court of Civil Appeals of Texas. Dallas.
Feb. 11, 1949.

Second Rehearing Denied April 8, 1949.

Curtis White, of Dallas, and L. L. Bowman, Jr., of Greenville, for appellant.

G. C. Harris, of Greenville, for appellee.

CRAMER, Justice.

Appellee, plaintiff below, brought his suit seeking to cancel the sale of a meat refrigeration display case sold by appellant to him; for damages for loss of meat stored in such case; and for damages for loss of custom growing out of his use of the case. As a basis for such relief, he alleged (on eight legal-size pages) false representations by the salesman as to the merits, adaptability and sufficiency of such case for his needs in his business. Further, that it was not as represented and was useless to him in his business; that he gave appellant all the time it requested to remedy the situation, which appellant was unable to do, and that during such time he lost $1,018.78 worth of meat by reason of the defects in such case. Plaintiff also sued for $1000 loss of custom.

Appellant, defendant below, answered by general denial, that the case, after it developed some cracks, was replaced by another which had no defects; also plead a written contract with a merger clause therein; that said case has been used continuously since its purchase by appellee and he is therefore estopped to claim damages because of deficiencies; and that appellee, by his conduct, accepted same and thereby waived any right to recover damages.

Trial was to the court and resulted in a judgment for plaintiff for cancellation of the contract; a money judgment of $985, being the value found by the court of the box plaintiff traded in on the new case;

for $1,100 cash difference paid with the order; and for $1,018.78 for loss of meats. No recovery was allowed for loss of custom. The trial court entered judgment for $3,203.78 which appellee admits was a mistake, as the total of the items allowed by the court amounts to only $3,103.78.

The first 10 assignments are with reference to findings and judgment for rescission and cancellation of the contract.

Considering the evidence sustaining the judgment, it is, in substance, that appellant's salesman, Holcomb, on or about November 20, 1946, called on appellee in an effort to sell him a new meat refrigeration case. The appellee then owned a Frederick meat refrigeration case which was not large enough to accommodate his needs. For that reason he was in the market for a larger case. The salesman for appellant represented to appellee that by use of the new case he would have less shrinkage in his meat; that appellant was bonded; that the case would keep his meat and do the job properly, and if it did not, he would make it good; he would return his money; that the salesman knew the volume of his business and his needs; that appellee believed and relied on such affirmative statements and would not have purchased the case but for such representations, etc.; that they agreed on a trade-in value of $985 for the Frederick case and appellee gave appellant his check for $1,100; that after that, the salesman asked him to sign the written contract which was signed by appellee without reading it, on the salesman's assurance that it was a cash contract and specified the equipment he was to receive; that he did not read the contract and that the salesman told him "* * * it was a piece of paper or something, so I could get the case, he didn't even leave it with me."

The salesman himself testified that he was in the place of business of appellee on November 20, 1946; that he had theretofore, on another call, inspected the Frederick case; that he sold appellee the new case for $2,085 less a credit of $985 for the Frederick case; that before the sale he was informed by appellee that he wanted the case for the preservation of fresh meat and that he (the salesman) also knew his purpose in getting the new case, and represented to him that the case would do the job; that it would keep his meat; that appellant would stand behind it; that it was after that discussion that he accepted the check and presented the contract to appellee. In his own words:

"Q. * * * you pulled that out after the trade had been concluded? A. Yes, sir.

"Q. After the agreement had been reached? A. Yes, sir."

It was undisputed that the case delivered under the contract, at the time the Frederick case was picked up on December 5, 1946, was defective and that appellant delivered to appellee a second case on March 9, 1947. As to this second case, appellee testified that before the exchange he discussed the matter with appellant's branch manager, F. C. Fallon, and that at that time Fallon "* * * stated it would be much better than the other, based on the fact of better workmanship and better material"; also that the back of the new case would be solid porcelain, would be much better than the first one; but when it was received he "found there was nothing on the back of it except painted sheet iron just like the other"; also, that the branch manager said he would have less shrinkage, the case would keep his meat to where his sales would pick up; it would increase his volume and would really do the job; "If it didn't do the job they were behind it." That at that time he believed Fallon and relied on what he said. As to the service of the second new case, appellee testified that it was worse than the other case and turned the meat dark to where it was not saleable over the counter; that his customers complained about it; that paint came off of the box and it cracked like the first one did; that he had "a lot of complaints on the color of the meat, it turns it just as black as can be over night and certainly nobody would buy that kind of meat * * *"; that he talked to Mr. Fallon about it and he said he would either fix it or make satisfactory settlement; that he tendered the case back and requested his money, but Fallon refused and wanted another chance to try to make it work. Fallon did not take the

witness stand. After that, appellee made numerous complaints to Fallon; Fallon almost continuously sent employees to his place of business to repair or work on the case, but, according to appellee's evidence, was unsuccessful.

Appellant says that the contract signed by appellee under the circumstances above, and which contained the following provision, "No agreement except what is embodied herein shall be binding upon the parties hereto and it is declared that this contract and the promissory note contains all agreements, representations, covenants and warranties, express or implied, relative to the operation and sale of said property, and the price thereof and the payment therefor" makes the representations and warranties of no probative effect and inadmissible against it; citing the cases of Super-Cold Southwest Co. v. Elkins, 140 Tex. 48, 166 S.W.2d 97, and Distributors Investment Co. v. Patton, 130 Tex. 449, 110 S.W.2d 47.

We are of the opinion that the case of Lone Star Olds Cadillac Co. v. Vinson, Tex.Civ.App., 168 S.W.2d 673, writ ref. want of merit, is more nearly in point. Judge Bond dissented in that case, relying on the Elkins and Patton cases cited here by appellant. The Vinson case is the subject of a note in 21 Texas Law Review, p. 811, where these cases are distinguished, and to which reference is made for a full discussion.

■ In this case, as in the Vinson case, the applicable doctrine, we think, was announced in the case of Bankers' Trust Co. v. Calhoun, Tex.Civ.App., 209 S.W. 826, writ refused, which cites the case of United States Gypsum Co. v. Shields, Tex. Civ.App., 106 S.W. 724, where it was held that fraud in the procurement could be shown, despite the merger clause. It is well established that the Parol Evidence Rule does not apply to evidence as to expressions of the parties outside the instrument when a frontal attack based on fraud is launched against the validity of the entire instrument. See Comment, 27 Texas Law Review, p. 361, under the title "The 'Merger Clause' and the Parol Evidence Rule," p. 366, sub-title "III Fraud."

■ The evidence was therefore properly admitted by the trial court on the issues of fraud vitiating the contract, which of course also vitiated the merger clause, such clause being a part of the contract.

The first eight assignments are overruled. We further hold that under the facts in this case the appellee did not waive his right, nor was he estopped, to rescind; and, therefore, overrule assignments nine and ten.

■ Appellants' assignments 11 to 15, complain of the trial court's allowance of the sum of $1,018.78 for loss of meats by reason of defects in the case. Here, again, we have the Merger Clause to deal with. In the January 1949, Vol. 27, Texas Law Review, p. 369, we find the state of the authorities in the following language: "It is a familiar agency rule that the principal will not be charged with the fraud of his agent where the principal is actually innocent and where the third party has notice of the agent's limited authority. This raises the problem of who should bear the burden of the agent's fraudulent misrepresentations as between the principal and the third party with whom the agent is dealing when the contract contains a merger clause. A seller should not be allowed to benefit from a fraud perpetrated by his own agent even though the seller is innocent. On the other hand, the seller should not be liable in damages when he has taken the precaution to notify the buyer by means of the merger clause that he will not be responsible for the agent's representations beyond those authorized in the written contract. The Restatement of Agency sets out a compromise rule which allows rescission and restitution where the buyer is concerned, but which absolves the innocent seller from liability for damages." In the cases there cited, the majority of adjudicated cases in other States follow the compromise rule, and since we deem it the most equitable rule, and not having been cited to a Texas case, we adopt it. Assignments 11 to 15 are, therefore, sustained and the judgment below is reformed so as to remove the recovery for the loss of the spoiled meats and the excess amount

of $100 in the court's total judgment, and, as so reformed, the judgment for $2,085 is affirmed.

### On Second Motion for Rehearing.

Appellant in its motion for rehearing raises the issue that we did not fully discuss the question of the appellee's waiver of rescission by keeping and using the box in question.

The record shows that the defects in the box were immediately discovered and appellant notified. Appellant removed the case and put in a second case, which appellee claimed was not any better than the first. Appellee then offered to return the case and demanded his money. Appellant refused to return the money but endeavored to repair or service the box. The evidence is conflicting as to the efficiency of the case but the trial court settled this issue against appellant. Suit was filed in June 1947; this suit was contested and pended for over a year before trial. His old box was not returned and appellant takes the position that appellee was not entitled to rescission. The test under this state of facts is, Was there such delay in asserting his rights by appellee in relation to the property after discovery of the fraud, as warrants the conclusion that appellee intended not to rely on his right of rescission? Hubbs v. Marshall, Tex.Civ. App., 175 S.W. 716. And as said in Randolph v. Witherspoon Oil Co., Tex.Civ. App., 291 S.W. 587, 588, reversed on other grounds, Commission of Appeals, 298 S.W. 520: "Appellee correctly asserts the rule that, when a party to a contract intends to disaffirm on account of the fraud of his adversary, he must act promptly upon discovery of the fraud. But the issue of diligence must be determined from the peculiar facts in each case, and, where there is any evidence from which a jury could find from all the circumstances of the case that the complaining party acted diligently, then it becomes a jury question."

We cannot say that the trial court was not justified, or was without evidence to find for appellee on this question. We think the rule is correctly stated in a Florida case, Southern Colonization Co. v. Derfler, 73 Fla. 924, 75 So. 790, 794, reported in L.R.A. 1917F, page 744, where, on page 748, it is held: "Where one party to a contract on the breach thereof by the other party promptly gives notice that he will not be bound by the same, and demands to be put in the [same] position in which he was at the time the contract was made, and offers to surrender all his rights under the contract, and enters into negotiations with the other party with the object of settling their differences without recourse to the courts, which ultimately come to naught, the doctrine of laches will not be applied to defeat the injured party of his remedy, * * *."

The former opinion on rehearing is withdrawn and since we are of the opinion there is no error in our former judgment, the second motion for rehearing is overruled.