## BILLINGTON et al. v. VEST.

### No. 5016.

Court of Civil Appeals of Texas.
El Paso.

May 5, 1954.

Rehearing Denied June 2, 1954.

Thomas, Thomas & Jones, Big Spring, for appellants.

Elton Gilliland and Coffee & Gilliland, Big Spring, for appellee.

McGILL, Justice.

Appellants as plaintiffs sued appellee and Allis-Chalmers Manufacturing Company as defendants to rescind a purchase of a cotton picker purchased by appellants from Allis-Chalmers corporation through appellee, and for damages because of such purchase. Plaintiffs' cause of action was based upon oral fraudulent representations alleged to have been made by appellee prior to the purchase of the cotton harvester to plaintiffs to induce them to make the purchase. Plaintiffs dismissed the suit as to the Allis-Chalmers corporation, and on motion of defendant R. C. Vest, Jr., the court rendered a summary judgment against plaintiffs that they take nothing.

The fraudulent oral representations alleged were: That the cotton harvester would harvest 98% of plaintiffs' cotton; that it would not damage the bolls on the cotton stalks while engaged in picking the open cotton; that it would pick cotton without wasting cotton at all, and that it would do a good job of picking plaintiffs' cotton. Plaintiffs further alleged that they relied on such representations and if same had not been made they would not have purchased the harvester; that such representations were untrue; that the harvester would harvest only about 40% of the open cotton; that it caused severe damage to unopened bolls and wasted a great deal of cotton by knocking it onto the ground and did not in any manner do a good job in picking the cotton. The defendant, R. C. Vest, Jr., pled that the harvester was sold to plaintiffs upon a written contract of sale in the form of a retail purchase order signed by plaintiffs, which contained the following provisions:

"It is understood that the Allis-Chalmers machinery is sold by the Dealer with the standard warranty of the Manufacturer, set forth in full on the reverse side hereof. This warranty is the only warranty either express, implied, or statutory, upon which said machinery is sold.

"It is understood that the Allis-Chalmers machinery is sold by the Dealer with the following standard warranty of the Manufacturer, And No Other:

"Allis-Chalmers Manufacturing Company warrants that it will repair f. o. b. its factory, or furnish without charge f. o. b. its factory, a similar part to replace any material in its machinery which within one year (six months as to crawler-type tractors and motor patrols) after the date of sale by the Dealer is proved to the satisfaction of the Company to have been defective at the time it was sold, provided that all parts claimed defective shall be returned, property identified, to the Company's branch house having jurisdiction over the Dealer's territory, charges prepaid.

"This warranty to repair applies only to new and unused machinery, which, after shipment from the factory of the Company, has not been altered, changed, repaired or treated in any manner whatsoever, and does not extend to trade accessories, by

the Company, though sold or operated with the Company's machinery.

"THIS WARRANTY TO REPAIR IS THE ONLY WARRANTY EITHER EXPRESS, IMPLIED, OR STATUTORY, UPON WHICH SAID MACHINERY is sold; the Company's liability in connection with this transaction is expressly limited to the repair or replacement of defective parts, all other damages and warranties statutory or otherwise, being hereby expressly waived by the Purchaser.

"No representative of the Company has authority to change this warranty or this contract in any manner whatsoever, and no attempt to repair or promise to repair or improve the machinery covered by this contract by any representative of the Company shall waive any consideration of the contract or change or extend this warranty in any manner whatsoever."

That plaintiffs could not vary or enlarge such provisions; also that the alleged representations, if made by defendant, were intended by defendant and understood by the plaintiffs to be mere expression of opinion by defendant and not representations of a present existing fact, but as "sales talk" or "puffing" and was so understood by plaintiffs, and plaintiffs did not rightfully rely on such representations, and such representations if made were made by defendant without knowledge of their falsity and without any intention of deceiving plaintiffs. Appellants' sole point is that the so-called Merger Clause here involved does not prevent introduction of parol evidence of fraud in the inducement of a contract.

█ A great deal has been written on this subject, as appears from a review of recent cases in 21 Texas Law Review, page 811, and comments, "The Merger Clause and the Parol Evidence Rule" Vol. 27, Texas Law Review, page 361. However,

we think the matter has been put at rest in this jurisdiction by the Supreme Court in the case of Distributors Investment Co. v. Patton, 130 Tex. 449, 110 S.W.2d 47, and Super-Cold S. W. Co. v. Elkins, 140 Tex. 48, 166 S.W.2d 97, which followed the Patton case. In the Patton case the court said [130 Tex. 449, 110 S.W.2d 48]:

"Fraud will vitiate an 'as is' contract, but the character of fraud necessary to vitiate such a contract is some representation, trick, artifice, or device which prevents the coming into existence of any valid contract at all. Conceivably, many acts of fraud could be committed which would give grounds for rescinding an 'as is' contract as well as one containing a provision like the one copied above to the effect that no representations or agreements made prior to, or at the time of the acceptance of the contract shall be binding on the parties. The pleadings in this case and the findings by the jury were not of such acts of fraud, but were of oral representations which conflict with the terms of the written contract. These representations were specifically negatived by the writing, and, if by denominating them fraud the written contract may be set aside, then a written contract is of no higher dignity than an oral one. The rule forbidding the varying of a written contract by parol would become a dead letter if prior oral agreements were permitted to govern the parties rather than subsequent written agreements on the same subject matter. Attaching the label of fraud to the oral representations does not change their character."

█ This statement of the law by the Supreme Court has never been changed or modified so far as we know. It is controlling on appellants' point, and is decisive against them.

The judgment is affirmed.