# DECEMBER, 1957

## DALLAS FARM MACHINERY COMPANY V. BEN REAVES

No. A-6316. Decided November 6, 1957.
Rehearing overruled December 18, 1957.
(307 S.W. 2d Series 233.)

*Wilbur T. Knape,* of Dallas, for petitioner.

The Court of Civil Appeals erred in holding that prior to the purchase of the machinery defendant had fully informed plaintiff of the nature of his business and that plaintiff knew of the capabilities of the tractor and loader, while defendant did not. Henry v. Phillips, 105 Texas 420, 151 S.W. 533; Ladd v. Whitledge, 205 S.W. 463, error refused; Maddox v. Roberson, 29 S.W. 2d 563.

*Cantey, Hanger, Johnson, Scarborough, & Gooch, Carlisle Cravens* and *Ed Reichelt,* all of Fort Worth, for respondent.

In sustaining the opinion of the Court of Civil Appeals cited Thompson v. Sawyers, 111 Texas 374, 234 S.W. 873; Free Sewing Machine Co. v. Atkins, 71 S.W. 2d 604, no writ history; Kirby v. Thurmond, 152 S.W. 1099.

MR. JUSTICE CALVERT delivered the opinion of the Court.

■ Writ of error was granted in this case on two of thirty points of error contained in petitioner's application. The two points pose the question of whether parol evidence is admissible, in the face of a "merger" clause in a written contract, to establish that the contract was induced by fraud. We hold it is.

Petitioner, a partnership, as plaintiff, sought a recovery from respondent, as defendant, of the balance due on a written contract of purchase of an Oliver OC-3 crawler tractor and an Oliver-Ware 3W-I loader. By way of cross-action respondent sought a rescission of the contract and a recovery of the value of a Ford tractor and equipment he had delivered to petitioner as a part of the purchase price of the Oliver tractor and loader.

In a non-jury trial judgment was entered denying petitioner a recovery and awarding the respondent the relief sought. Findings of fact and conclusions of law in support of the judgment

were filed by the trial judge. The judgment was affirmed by the Court of Civil Appeals. 300 S.W. 2d 180.

A completed printed "CUSTOMER'S ORDER FOR OLIVER EQUIPMENT" form constitutes the written contract between the parties. It contains the following provision: "I have read the matter on the back hereof and agree to it as a part of this order as if it were printed above my signature. I also acknowledge receipt of a copy of this order which is understood to be the entire contract relating to the sale and warranty of the above described equipment excepting as to any notes, conditional sales contracts or chattels mortgages entered into as above specified." On the reverse side of the order and under a heading "WARRANTY AND AGREEMENT" is the following applicable language: "Seller warrants that new OLIVER goods herein described are well made and of good material, and agrees to replace, F.O.B. sellers place of business, for a period of six months after delivery of such goods to Buyer by Seller, such parts found upon inspection to be defective in workmanship or material. * * * This warranty is made in lieu of all other warranties, express or implied, and no warranty is made or authorized to be made other than herein set forth. * * *."

The judgment for respondent rests upon pleading, proof and findings that respondent was induced to enter into the contract by false representations as to the work capabilities of the Oliver tractor and loader, knowingly made by one of petitioner's partners to respondent, on which he relied, and but for which he would not have entered into the contract. Petitioner objected to the evidence offered to support respondent's plea of fraud on the ground that it would vary the terms of the written contract. In asserting that evidence of oral representations of the work capabilities of the tractor and loader was inadmissible petitioner relies on the holdings in Avery Co. v. Harrison Co., Texas Com. App., 267 S.W. 254; Wright v. Couch, Texas Civ. App., 54 S.W. 2d 207, no writ history; Distributors Inv. Co. v. Patton, 130 Texas 449, 110 S.W. 2d 47 and Super-Cold Southwest Co. v. Elkins, 140 Texas 48, 166 S.W. 2d 97. More will be said of these cases later.

A review of the Texas cases on the question reveals conflicting decisions and indicates a resulting confusion which can hardly be resolved or explained away with nice distinctions. Some of the decisions should be noticed.

There are earlier cases dealing with the subject, but a good

starting point for purposes of this discussion is Edward Thompson Co. v. Sawyers, 111 Texas 374, 234 S.W. 873. Suit in that case was on a written contract for unpaid installments on the purchase price of law books. By cross-action the defendant sought rescission and damages on the ground that he had been induced to enter into the contract by a promise of the plaintiff's agent to furnish future supplements, which promise was fraudulently made with no intention that it should be kept. The contract contained a provision that no representations or guaranties had been made by the salesman which were not expressed in the contract. The Court of Civil Appeals, being divided, certified to this court the question of the admissibility of evidence with reference to the oral promises. In answering the question this court said (234 S.W. 874):

"Contracts, though reduced to writing, are avoided when induced by material promises, never intended to be kept, not because one is allowed to vary his written contract, but because real assent is essential to a binding contract.

\* \* \* \*

"One who is entitled to avoid an entire written contract because it lacked his assent can no longer be bound by any of its stipulations, including those relating to representations or guaranties which induced its execution."

In the face of the holding in the Sawyers case, and taking no notice of it, Section A of the Commission of Appeals held, in J. I. Case Threshing Mach. Co. v. Manes, 254 S.W. 929, that a purchaser of an automobile could not, on the basis of fraudulent antecedent oral representations of an agent as to the performance capabilities thereof (see Texas Civ. App., 241 S.W. 757, 758), rescind and avoid the obligations of a written contract which contained a merger clause and a clause limiting the authority of the agent. The particular holding seems to rest on the fact that there was "no finding that plaintiff was induced to sign the contract by fraud or deceit." (254 S.W. 931).[1]

The holding in the Manes case was then made the foundation of the holding, by the same court, in Avery Co. v. Harrison Co., Texas Com. App., 267 S.W. 254, relied on here by petitioner, which in turn, was quoted with approval by this court as decisive in Distributors Inv. Co. v. Patton, 130 Texas 449, 110

---

[1]Emphasis ours.

S.W. 2d 47. It may be said that these cases, aided by the holding of the Eastland Court of Civil Appeals in Wright v. Couch, 54 S.W. 2d 207, seemed, for a time at least, to establish firmly in our jurisprudence a distinction between fraud *in the execution* of a contract and fraud *in the inducement* of a contract, a distinction subsequently reinforced by the opinion of this court in Super-Cold Southwest Co. v. Elkins, 140 Texas 48, 166 S.W. 2d 97. But that distinction has not always been recognized or enforced, even by this court, as we shall see.

In Avery Co. v. Harrison Co., supra, plaintiff's suit was for damages growing out of the purchase of a tractor and some plows. The contract for the sale of the machinery contained a merger clause. The Court of Civil Appeals affirmed a recovery by the plaintiff on the ground that the plaintiff had pleaded and proved that he had been induced to enter into the contract by fraudulent representations made by agents of the work capabilities of the machinery. Avery Co. v. Harrison Co., 254 S.W. 1015. The Commission of Appeals' recommendation that the judgments of the trial court and the Court of Civil Appeals be reversed and that judgment be rendered for the defendant was adopted by this court. In its opinion the Commission of Appeals took notice of the Sawyers case (267 S.W. 257) but said that if the suit before it could be treated as one "for damages on the ground that plaintiffs were induced by fraud to enter into the contract the pleadings were insufficient to sustain such action. In the course of the opinion, however, the court announced the rule that in the absence of allegations and proof that by reason of fraud, accident or mistake the written contract contained something not agreed to by the parties, or by reason thereof omitted some promise, representation or warranty, or that by reason of some fraudulent representation, artifice. or conduct the parties were induced to sign the contract, or that when it was signed the parties did not know or were prevented from knowing what it contained, it would be conclusively presumed that the written contract contained the whole agreement of the parties and parol evidence of representations, statements or warranties not disclosed by the contract would not be admissible. (267 S.W. 256). The rule announced precludes a showing of fraud in the inducement of a contract as distinguished from fraud in the execution thereof. The rule thus announced in Avery Co. v. Harrison Co. became the rule of decision in Distributors Inv. Co. v. Patton, supra.

The Patton case involved a cross-action to rescind a written contract of purchase of a tractor and a wagon because of fraudu-

lent representations of an agent regarding the work capabilities of the tractor and the newness of some of its parts. The written contract described the tractor as "secondhand," sold "as is." It contained a merger clause. A trial court judgment of rescission was entered on jury findings that the contract was induced by the fraudulent representation. The judgment was affirmed by the Court of Civil Appeals in an opinion citing Thompson Co. v. Sawyers, Elliott on Contracts, Ruling Case Law, an A.L.R. annotation and decisions by Texas Courts of Civil Appeals for the proposition that any contract induced by fraud—"as is" or otherwise, and even though containing a merger clause—is voidable and parol evidence is admissible for the purpose of establishing the fraud and vitiating the contract. 83 S.W. 2d 782, 786-787. This court reversed the judgment of the Court of Civil Appeals and, on authority of J. I. Case Threshing Co. v. Manes, supra, Avery Co. v. Harrison Co., supra, and Wright v. Couch, supra, held that a written contract was voidable only for fraud in its execution, saying (110 S.W. 2d 48):

"These representations were specifically negatived by the writing, and, if by denominating them fraud the written contract may be set aside, then a written contract is of no higher dignity than an oral one. The rule forbidding the varying of a written contract by parol would become a dead letter if prior oral agreements were permitted to govern the parties rather than subsequent written agreements on the same subject matter. Attaching the label of fraud to the oral representations does not change their character."

The court also quoted with approval from Wright v. Couch as follows (110 S.W. 2d 49):

"False representations, whether regarding matters of present or past existence, or whether, (in the nature of promises) of future existence, do not constitute actionable fraud if the contract which it is claimed they induced specifically provides to the contrary of such representations and no claim is made that the contract does not express the true agreement."

The opinion took no notice of Thompson Co. v. Sawyers or of the other authorities cited and relied on by the Court of Civil Appeals.

The rule of the Patton case, as drawn from Avery Co. v. Harrison Co. and Wright v. Couch, was again approved by this court in Super-Cold Southwest Co. v. Elkins, 140 Texas 48, 166 S.W. 2d 97, in which will be found the latest expression of this

court and in which fraudulent representations in inducing the contract were alleged as a basis for a plea of total failure of consideration of purchase money notes given for a refrigerating device.

With the series of cases here analyzed (other than the Elkins case) before it, this court nevertheless held, in Texas & P. Ry. Co. v. Presley, 137 Texas 232, 152 S.W. 2d 1105, that fraudulent representations as to the extent of the plaintiff's injuries and fraudulent promises of permanent employment, of agents, all made to induce a contract of release of liability for damages, rendered the release voidable and could be established by parol evidence. The holding was made in the face of recitals in the written instrument that the plaintiff relied upon his own judgment as to the nature, extent and duration of his injuries and that no promise of employment or other agreement not mentioned in the release had been made. The defendant contended that inasmuch as the release contained the above recitals it could be avoided only by proof of fraud in its execution, but the court said: "We cannot assent to this contention, for the reason that if the release is voidable on account of fraud in its inception, then each and every portion and clause thereto (sic) is unenforceable and without binding effect on the plaintiff." 152 S.W. 2d 1107.

The holding in the Presley case is doubly significant because of its procedural background. The opinion reflects that on original submission the Eastland Court of Civil Appeals, relying on the Patton case and the other cases cited therein, reversed the trial court's judgment for the plaintiff and rendered judgment for the defendant, but on motion for rehearing, relying on Texas & N. O. Ry. Co. v. Thompson, Texas Com. App., 12 S.W. 2d 963 and Thompson Co. v. Sawyers, supra, and cases therein cited, withdrew its first opinion and judgment and entered judgment affirming the trial court's judgment. The opinion on rehearing was adopted without qualification by this court.

By our decision in the Presley case this court quite obviously reverted to the rule of the Sawyers case and it found strong support in the Commission of Appeals' opinion in Texas & N. O. Ry. Co. v. Thompson, 12 S.W. 2d 963, which intervened between the Avery and Patton cases. In that case the plaintiff sought to set aside a written release and to recover damages for personal injuries. His right to set aside the release was predicated on fraud in its inducement by way of a promise of an agent of employment by the principal. The release recited that no

promise of employment had been made. The jury found that the promise was made and also found the necessary elements of fraud in the making thereof. There was no contention that there was fraud involved in obtaining the plaintiff's signature. The defendant was denied the submission of a special issue inquiring whether at the time the release was executed and delivered the plaintiff knew of its terms and conditions. The defendant's right to the submission of the issue was the principal question before the Commission of Appeals. The court said that if an answer to the issue could not affect the result of the case the refusal to submit it would not be error, and continued:

"We are of the opinion that in so far as the jury finding is concerned, it is absolutely immaterial to any issue of this case whether plaintiff knew the terms and conditions of the release in question at the time he delivered same to the claim agent of the defendant, for the reason that, if fraud induced the execution and delivery thereof, under the settled law of this state the release was voidable and subject to be set aside for fraud." (12 S.W. 2d 964).

The court thus by implication rejected the idea that only fraud in the execution of the release would avoid it and as authority for its holding cited the Sawyers case. It took no notice of Avery Co. v. Harrison Co. But the court was not satisfied to reject the idea by implication; it rejected it expressly in the following language:

"It is the contention of the defendants that, since the release itself contains the above-quoted provisions [no promise of employment * * * has been made" etc.] before plaintiff can set aside the release or contradict the terms thereof by oral evidence of fraud, the proof must show that fraud [was] committed in the preparation of the release, or that the claim agent by some fraudulent act had prevented the plaintiff from ascertaining the true terms and conditions of said release. We cannot assent to this contention, for the reason that if the release is voidable on account of fraud in its inception, then each and every portion and clause thereto (sic) is unenforceable and without binding effect on the plaintiff. (12 S.W. 2d 964).

\*　\*　\*　\*　\*

"It therefore follows, from the above authorities, and many others, that even though the plantiff may have read over the release, and may have known its contents at the time he signed

and delivered same to the claim agent of the defendant companis, such fact, could not, in law, constitute such release a contract, binding on the plaintiff if it was procured by fraud. * * *." (12 S.W. 2d 966).

There were a number of other Texas decisions, antedating the Patton case, which held that parol evidence was admissible to prove that a written contract containing a merger clause or a clause disclaiming responsibility for representations of agents was induced by fraud. See United States Gypsum Co. v. Shields, Texas Civ. App., 106 S.W. 724, 726, affirmed 101 Texas 473, 108 S.W. 1165 (Representations by an agent; Action for rescission); Kirby v. Thurmond, Texas Civ. App., 152 S.W. 1099, 1102, no writ history (Representations by principal to an "as is" contract; suit for rescission and damages); Atchison T. & S.F. Ry. Co. v. Skeen, Texas Civ. App., 174 S.W. 655, writ refused (Representations by agent; rescission); J. I. Case Threshing Machine Co. v. Webb, Texas Civ. App., 181 S.W. 853, writ refused (Representations by agent; rescission); Hackney Mfg. Co. v. Celum, Texas Civ. App., 189 S.W. 988, affirmed 221 S.W. 577 (Texas Com. App.,) (Representations by agent; rescission an dincidental damages); Bankers Trust Co. v. Calhoun, Texas Civ. App., 209 S.W. 826, writ refused (Representations of agent; rescission); Landfried v. Milam, Texas Civ. App., 214 S.W. 847, no writ history (Representations by agent; rescission or damages); Detroit Automatic Scale Co. v. G.B.R. Smith Milling Co., Texas Civ. App., 217 S.W. 198, no writ history (Representations of agent; rescission); American Law Book Co. v. Fulwiler, Texas Civ. App., 219 S.W. 881, no writ history (Representations of agent; rescission); George v. Birchfield, Texas Civ. App., 264 S.W. 632, no writ history (Representations by principal; rescission); Advance-Rumely Thresher Co. v. Higgins, Texas Civ. App., 279 S.W. 531, 534-535, writ dismissed (Representations by agent; suit for damages against principal); J. B. Colt Co. v. Wheeler, Texas Civ. App., 12 S.W. 2d 1102, writ dismissed, 23 S.W. 2d 299 (Texas Com. App.) (Representations by agent; suit for damages against principal); Scruggs v. Dean, Texas Civ. App., 47 S.W. 2d 378, writ dismissed (Representations by principal to "as is" contract; suit for damages); Norm Co. v. City Drug Stores, Texas Civ. App., 59 S.W. 2d 270, no writ history (Representations by principal; rescission); Free Sewing Machine Co. v. S. T. Atkin Furn. Co., 71 S.W. 2d 604, no writ history (Representations by Agent; rescission and incidental damages). No effort has been made to exhaust the list of such cases.

The rule of the Paton case has subsequently been applied in substantially similar fact situations in Willis v. Adams, Texas Civ. App., 138 S.W. 2d 855, writ dismissed, Billington v. Vest, Texas Civ. App., 268 S.W. 2d 705, no writ history, and Rogers v. J. I. Case Co., Texas Civ. App., 272 S.W. 2d 429, no writ history. On the other hand, there are subsequent Court of Civil Appeals' decisions, in addition to the decision in this case, which have not applied the rule of the Patton case. See Strickler v. International Harvester Co., Texas Civ. App., 141 S.W. 2d 989, writ dismissed, correct judgment; Lone Star Olds Cadillac Co. v. Vinson, Texas Civ. App., 168 S.W. 2d 673, writ refused, want of merit, in which there was a vigorous dissent based on the Avery Co., Wright, Patton and Elkins cases, and which the majority sought to harmonize with the Patton case on the ground that the complaining party was induced not to read the contract; Super-Cold Southwest Co., v. Willis, Texas Civ. App., 219 S.W. 2d 144, writ refused, N.R.E., in which the contract was not read; Super-Cold Southwest Co. v. Chowning, Texas Civ. App., 248 S.W. 2d 504, writ refused, N.R.E., in which it was said that if the contract was induced by fraud the absence of fraud in its execution was immaterial; Coleman v. Ammons, Texas Civ. App., 249 S.W. 2d 1014, no writ history, in which there was also a vigorous dissent based on the Avery Co., Wright and Patton cases; Roy Klossner Co. v. F. B. McIntire, Texas Civ. App., 301 S.W. 2d 197, writ of error pending, in which the court recognized the conflict in prior decisions and chose to follow the Sawyers and Presley decisions rather than the Patton decision.

■ The two conflicting lines of authority may not be distinguished on the ground that different remedies are sought, that is, that some are suits for damages and others are actions for rescission, for it is well settled that one who is induced by fraud to enter into a contract has his choice of remedies. "He may stand to the bargain and recover damages for the fraud, or he may rescind the contract, and return the thing bought, and receive back what he paid." Blythe v. Speake, 23 Texas 429, (421), 437, (428) ; Russell v. Industrial Transportation Co., 113 Texas 441, 258 S.W. 462, 463, 51 A.L.R. 1. Neither may the Avery Co. and Patton cases on the one hand be distinguished from the Thompson and Presley cases on the other on the ground that the former involved contracts of purchase and the latter contracts of release of liability. Aside from the fact that the nature of the contracts affords no sound basis for a distinction in law, it will be noted that in the Thompson and Presley cases, involving releases of liability, the courts relied strongly on the Saw-

yers case which involved a contract of purchase, and that the Sawyers opinion,· in turn, cited as principal authority Rapid Transit Ry. Co. v. Smith, 98 Texas 553, 86 S.W. 322, a case involving a release of liability.

Considering the state of our decisions herein reviewed and noted, we find ourselves confronted with a situation identical with that faced by the Supreme Judicial Court of Massachusetts in Bates v. Southgate, 308 Mass. 170, 31 N.E. 2d 551. That case involved the same question involved in the instant case. Prior decisions of the Massachusetts courts were in the same state of conflict and confusion as are our decisions, and for the same reason. The Massachusetts courts chose to resolve the conflict by adopting the rule that a written contract containing a merger clause can be avoided for antecedent fraud or fraud in its inducement and that the parol evidence rule does not stand in the way of proof of such fraud. The court's opinion, written by Justice Qua, predicates the decision on sound public policy, as follows (31 N.E. 2d 558) :

"As a matter of principle it is necessary to weigh the advantages of certainty in contractual relations against the harm and injustice that result from fraud. In obedience to the demands of a larger public policy the law long ago abandoned the position that a contract must be held sacred regardless of the fraud of one of the parties in procuring it. No one advocates a return to outworn conceptions. The same public policy that in general sanctions the avoidance of a promise obtained by deceit strikes down all attempts to circumvent that policy by means of contractual devices. In the realm of fact it is entirely possible for a party knowingly to agree that no representations have been made to him, while at the same time believing and relying upon representations which in fact have been made and in fact are false but for which he would not have made the agreement. To deny this possibility is to ignore the frequent instances in everyday experience where parties accept, often without critical examination, and act upon agreements containing somewhere within their four corners exculpatory clauses in one form or another, but where they do so, nevertheless, in reliance upon the honesty of supposed friends, the plausible and disarming statements of salesmen, or the customary course of business. To refuse relief would result in opening the door to a multitude of frauds and in thwarting the general policy of the law."

We make the same choice made by the Massachusetts court, and in so doing we bring the law on the subject in this state

into harmony with the great weight of authority, 32 C.J.S. 942-946, Evidence, Sec. 979a; 23 Am. Jur. 778-781, Fraud and Deceit, Sec. 26; 75 A.L.R. 1041-1068; 127 A.L.R. 137-156; 133 A.L.R. 1361-1362; with the rule of the Restatement of the Law of Contracts, Vol. 2, sec. 573, p. 1079; and with the views of eminent textwriters. Corbin on Contracts, Vol. 3, sec. 580, p. 257-260 ("But fraud in the inducement of assent, * * * may make the contract voidable without preventing its existence, and without showing that the writing was not agreed on as a complete integration of its terms. In such rase the offered testimony * * * merely proves the existence of collateral factors that have a legal operation of their own, one that prevents the written contract from having the full legal operation that it would otherwise have had. This is not varying or contradicting the written terms of agreement, although it does vary or nullify in part their legal effect.") ; Williston on Sales, Revised Ed., Vol. 3, sec. 631b, p. 435 ("It is a common provision in written contracts that no other promises, representations or inducements were made than are contained in the writing. Such provisions are effectual to exclude warranties not included in the writing unless based on fraudulent misrepresentations, but it is now well settled that such provisions cannot bar proof of fraudulent representations or remedy for them.") ; Williston on Contracts, Revised Ed., Vol. 3, sec. 811A, pp 2281-2285 ("And like the parol evidence rule, the merger clause is ineffectual to exclude evidence of extraneous prior or contemporaneous representations of either the principal or an agent to establish fraud by way of defense or in an action for rescission, since even if the principal is himself innocent, he cannot be allowed to retain a benefit obtained by the fraud of his agent. * * * There are decisions which distinguish between fraud in the inducement of the contract and fraud in the execution, holding the merger clause precludes proof of the former kind. This distinction is not to be supported.") ; Wigmore on Evidence, Second Ed., Vol. 5, sec. 2439, pp 325-326 ("Fraud is always a matter of false representations; and how is it that extrinsic representations are as warranties to be ignored but as fraud to be admitted? The explanation seems to be that the vital additional element in fraud is the party's state of mind, which neither can be nor is intended to be embodied in the written document, and that hence the rule does not forbid considering it wherever it is the vital element of the claim.") ; Elliott on Contracts, Vol. 1, sec. 70 ("if one is induced to go through the form of making a contract because of some fraud or misrepresentation made by the other party or his agent, relative to a material element of

the agreement, such that if he had known the truth he would not have given his assent, the contract may be avoided by him. There can be no real assent when it is induced by fraud.") ; Vol. 2, sec. 1650; McCormick and Ray, Texas Law of Evidence, Second Ed., Vol. 2, sec. 1644 ("* * * it is only when the oral expressions are relied on as warranties, that is, *as parts of the contract*, as being obligations intentionally assumed, that the Parol Evidence Rule applies. If they are relied on as *misrepresentations* and the theory of recovery or defense is *fraud*, then the Parol Evidnce Rule is clearly without application. On the latter proposition there has been some apparent wavering in Texas cases where the writing contained a disclaimer of warranties, or 'merger clause.' Yet even here the sounder authority seems to admit extrinsic agreements for the purpose of avoiding the instrument for "fraud.") ;[2] Black on Recission and Cancellation, Vol. 2, sec. 408. For interesting comments on Texas cases, see 21 T.L.R. 811, 27 T.L.R. 361, 366, and 31 T.L.R. 906.

In the instant case the remedy sought is rescission. In an article in 27 T.L.R. 361, 369, the author suggests that an innocent principal should not be required to respond in damages for the fraud of his agent when the written contract limits the authority of the agent, and that in such situations the wronged party should be relegated to his action for rescission or a suit for damages against the agent. The suggested rule was adopted and applied in Super-Cold Southwest Co. v. Willis, Texas Civ. App., 219 S.W. 2d 144, writ refused, N.R.E., in which rescission was allowed but a recovery of damages against an innocent principal was disallowed. That question is not before us and we do not decide it.

The trial court filed detailed findings of fact fully supporting respondent's right of rescission. Many of petitioner's points of error attack holdings of the Court of Civil Appeals that the findings of fact have support in the evidence. We have reviewed the pertinent evidence and conclude that there is evidence of probative force supporting the findings. Accordingly, these points of error are overruled.                 ,

■ The purchase price of the Oliver tractor and loader was $4,134.50. By the terms of the contract petitioner agreed to accept in satisfaction thereof the sum of $2050.00 in cash and a "trade-in" of a Ford tractor with Wagner loader and an F. & F. Rotocycle Cutter. Respondent made advance arrangements with

---

[2]Emphasis the authors.

a bank for a loan of a sufficient sum to cover the cash payment and as security for the loan gave the bank a mortgage on the old machinery and a mortgage on the new machinery, with the understanding that when the new machinery was delivered and the serial number filled in the mortgage thereon the mortgage on the old machinery would be released. When the contract of purchase was executed respondent delivered to petitioner his check for $2050.00, drawn on the mortgagee bank. Immediately after delivery  of the machinery and discovery by respondent that it would not perform as represented, payment on the check was stopped and the machinery was stored and respondent demanded a return of the trade-in machinery. The demand was refused by petitioner who sold the trade-in machinery and took possession of the Oliver machinery under a writ of sequestration. In his cross-action respondent prayed for recission of the contract and cancellation of the check and for recovery of $2094.00 representing the reasonable cash market value of the trade-in machinery. Judgment was awarded according to respondent's prayer.

Petitioner seems to contend that by the execution of the chattel mortgage respondent ratified the contract and disabled himself from rescinding the contract. The chattel mortgage was executed before respondent discovered that the machinery would not perform as represented and cannot be regarded as a ratification of the contract. Neither does the execution of the mortgage prevent a rescission of the contract. Payment on the check was stopped and the money advanced by the bank was not used. The evidence does not indicate the continued existence of the debt which the mortgage was intended to secure. There being no debt the lien of the mortgage was extinguished. Perkins v. Sterne, 23 Texas 561, 563; (548), 563, (550) ; 29 Texas Jur. 916, Mortgages, sec. 94. A somewhat similar contention was summarily disposed of by the San Antonio Court of Civil Appeals in Packard-Dallas v. Carle, 163 S.W. 2d 735, 738.

■ Petitioner complains of the recovery by respondent of the sum of $2094.00. One objection to the recovery is that respondent failed to prove the necessary measure of damages as set out in Morriss-Buick Co. v. Pondrom, 131 Texas 98, 113 S.W. 2d 899, to-wit: the difference between the value of what he parted with and what he received under the contract. The Pondrom case involved an affirmance of a contract procured by fraud and a suit for damages. The measure of damages there set out has no application to a suit for rescission. The money

recovery awarded in this case was the market value of the trade-in machinery which petitioner had sold. It was awarded in lieu of a return of the trade-in machinery. There was evidence supporting the trial court's finding that the fair market value of the machinery was $2100.00, and it was not error to award respondent a recovery of $2094.00 in lieu of the return of the trade-in machinery. Black on Recission and Cancellation, Vol. 2, sec. 690, p. 1560, sec. 695, p. 1570; 12 C.J.S. 1093, Cancellation of Instruments, sec. 79d(1), p. 1093.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered November 6, 1957.

MR. JUSTICE SMITH concurring.

I am not prepared to agree with the analysis of the many cases referred to in the majority opinion. However, I agree with the result reached in this case for the reason that the record shows that the entire transaction, including the statements made by Mr. Kincaid (owner) and Mr. Myers (agent), was one of continuing fraud and in my opinion the findings of the trial court are sufficient to show fraud in the inducement or procurement as well as fraud in the execution of the contract. Under the record in this case, I see no reason for going into the record of the cases such as the Patton case which involved dijerent facts and different pleadings.

It is proper to affirm the judgment of the Court of Civil Appeals.

Opinion delivered November 6, 1957.

Rehearing overruled December 18, 1957.