Affirmed and Memorandum Opinion filed February 21, 2006









Affirmed
and Memorandum Opinion filed February 21, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-00462-CV

____________

 

MARROT
COMMUNICATIONS, INC., Appellant

 

V.

 

SPRING BRANCH
MEDICAL CENTER, INC., Appellee

 



 

On Appeal from the 234th
District Court

Harris County, Texas

Trial Court Cause No. 2002-64561

 



 

M E M O R A N D U M   O P I N I O N

Appellant Marrot Communications, Inc. (AMarrot@) appeals the
trial court=s take-nothing judgment on its breach of
contract claims against Spring Branch Medical Center, Inc. (ASBMC@).  Marrot also challenges the trial court=s findings of fact
and conclusions of law entered in support of its judgment, and contends the
court erred by failing to award it reasonable attorney fees.  We affirm.








Factual and Procedural Background

Marrot provides advertising services to
clients.  In April 1999, SBMC executed a
general services agreement with Marrot, in which SBMC agreed to pay a monthly
retainer and fees associated with the production of various advertising
projects.  Although the two-year
agreement renewed automatically, the parties agreed in May 2001 to replace it
with a second agreement that eliminated the retainer and provided for five
specific projects to be completed during the term of May 1, 2001, to December
31, 2001.  The parties also agreed that
the second agreement would Aeffectively cancel
and supersede@ the first agreement upon its Aexecution and
completion.@ 
Four of the five specified projects were completed.  Regarding the fifth project, a physician
directory, SBMC asked to delay its completion until 2002 and to substitute a
community newsletter for the physician directory at the same price.  Marrot acknowledges it agreed to the
extension of time, but disputes that it agreed to substitute the community
newsletter for the physician directory.

Marrot brought suit against SBMC for
breach of the second contract, which it contended revived the first contract
and entitled it to damages of $425,000 as provided in a liquidated damages
clause contained in Marrot=s AStandard Terms and
Conditions.@ 
Marrot also alleged that it created and licensed to SBMC the slogan AHouston=s Other Great
Medical Center,@ and that SBMC breached the first contract
by using the slogan after the contract was terminated and the license
expired.  SBMC denied the allegations and
raised a number of affirmative defenses and counterclaims against Marrot.  

Following a bench trial, the trial court
entered a judgment in which it ordered that Marrot take nothing on its claims
against SBMC, and SBMC take nothing on its claims against Marrot.  Marrot also requested, and the trial court
filed, findings of fact and conclusions of law. 
This appeal followed.

 

 








Analysis of the Issues

Marrot divides its arguments into two
major sections:  (1) the alleged breach
of the first and second agreements; and (2) the alleged breach of the licensing
agreement.  We will address them in the
same fashion.[1]

I.        The
Alleged Breaches of Contract

The trial court found that, among other
things, SBMC did not agree to Marrot=s AStandard Terms and
Conditions,@ SBMC fully complied with both the first
and second agreements, and Marrot received the full benefit of the bargain and
had no damages.  It also concluded that
Marrot=s fraud and
negligent misrepresentations barred it from recovery, and entered findings
supporting these conclusions.  Marrot
challenges the legal and factual sufficiency of these and numerous other
findings of fact and conclusions of law, but we will address only those
necessary to dispose of the appeal. 

A.      Standards
of Review

A trial court=s findings are
reviewable for legal and factual sufficiency of the evidence by the same
standards that are applied in reviewing evidence supporting a jury=s answer. Catalina
v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994).








In determining whether legally sufficient
evidence supports the finding under review, we must consider evidence favorable
to the finding if a reasonable fact finder could consider it, and disregard
evidence contrary to the finding unless a reasonable fact finder could not
disregard it.  City of Keller v.
Wilson, 168 S.W.3d 802, 827 (Tex. 2005). 
A legal sufficiency point may only be sustained when the record
discloses: (1) a complete absence of evidence of a vital fact; (2) the court is
barred by rules of law or of evidence from giving weight to the only evidence
offered to prove a vital fact; (3) the evidence offered to prove a vital fact
is no more than a mere scintilla;  and
(4) the evidence established conclusively the opposite of the vital fact.  Juliette Fowler Homes, Inc. v. Welch
Assoc., 793 S.W.2d 660, 666 n.9 (Tex. 1990).  The final test for legal sufficiency is
whether the evidence at trial would enable reasonable and fair-minded people to
reach the verdict under review.  City
of Keller, 168 S.W.3d at 827.  

In reviewing a factual‑sufficiency
point, we consider all the evidence supporting and contradicting the
finding.  Plas‑Tex, Inc. v. U.S.
Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989).  We set aside the verdict only if the finding
is so contrary to the overwhelming weight of the evidence as to be clearly
wrong and unjust.  Cain v. Bain,
709 S.W.2d 175, 176 (Tex. 1986).  In a
bench trial, the trial court, as fact finder, is the sole judge of the
credibility of the witnesses.  See
City of Keller, 168 S.W.3d at 819; Barrientos v. Nava, 94 S.W.3d
270, 288 (Tex. App.CHouston [14th Dist.] 2002, no pet.).   

In an appeal from a bench trial, we review
a trial court=s conclusions of law as legal questions,
de novo, and will uphold them on appeal if the judgment can be sustained on any
legal theory supported by the evidence.  BMC
Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002).  An appellant may not challenge a trial court=s conclusions of
law for factual sufficiency, but we may review the legal conclusions drawn from
the facts to determine their correctness. 
Id.  If we determine that a
conclusion of law is erroneous, but that the trial court nevertheless rendered
the proper judgment, the error does not require reversal.  Id. 

B.      The
First Agreement and the Standard Terms and Conditions








Much of Marrot=s briefing focuses
on a liquidated damages clause contained in Marrot=s AStandard Terms and
Conditions,@ which it contends should be enforced
despite the trial court=s finding that SBMC did not agree to the
terms and conditions.[2]  If enforced, Marrot contends it is entitled
to damages of $425,000.  We find,
however, that the trial court=s finding that
SBMC did not agree to the terms and conditions is supported by legally and
factually sufficient evidence, whether based upon (1) Kim Long=s testimony that
the terms and conditions were not included in the first agreement she signed or
(2) Marrot=s fraud and misrepresentations during the
negotiation of the agreement.

1.       Marrot=s AStandard Terms and
Conditions@ 

The terms and conditions consist of
twenty-three paragraphs in very small type on a single page.  In fact, the type is so small that Marrot
itself provided the trial court with an exhibit consisting of the terms and conditions
enlarged to make them readable; when so enlarged, the terms and conditions took
just over five pages to reproduce.  At
trial, the parties disputed whether the terms and conditions were or were not
on the back of the page of the first contract when it was signed by Kim Long,
marketing director for SBMC.  Ms. Long
confirmed her original signature was on Marrot=s exhibit, but
contended she did not see the terms and conditions on the back of the document
she signed and did not believe they were there when she signed it.  She also testified that the copy of the
agreement  she was given later did not
contain the terms and conditions; this copy was also placed in evidence.  








Marrot argues that, because Ms. Long
admitted she did not read the agreement before signing it, her testimony that
the terms and conditions were not there is incompetent.  Marrot also contends there was no evidence or
expert testimony that the document was altered. 
However, we find the issue is one of credibility of the witnesses and
conflicting evidence, and it was within the province of the trial judge to
resolve it.  Further, Marrot=s president and
sole shareholder, Mark Rothenberg, acknowledged in his testimony that the terms
and conditions are visible from the front of the signature page.  Thus, Ms. Long did not have to read the
agreement to see whether the terms and conditions were there; she merely had to
see the signature page, which she clearly did, because she signed it.  

Thus, we find the evidence is legally and
factually sufficient to support the trial court=s finding of fact
that SBMC did not agree to the terms and conditions.

2.       Marrot=s Fraud and
Misrepresentation








Marrot also contends that SBMC is bound by
the terms and conditions, because both the first and second agreements were
made subject to them by provisions just above the signature line, and SBMC
cannot avoid the agreement=s provisions
merely because Ms. Long did not read them.[3]  We acknowledge that A[a]bsent fraud,
misrepresentation, or deceit, a party is bound by the terms of the contract he
signed, regardless of whether he read it or thought it had different terms.@  In re McKinney, 167 S.W.3d 833, 835
(Tex. 2005).  The trial court, however,
entered findings of fact and conclusions of law that Marrot engaged in fraud
and misrepresentation in connection with the first agreement, based on Marrot=s representation
to Ms. Long that the purpose of the first agreement was to protect SBMC.   The trial court also entered conclusions of
law that Marrot=s fraud and misrepresentation barred it
from recovery.  Therefore, the general
rule articulated in McKinney does not apply.  Texas law has long imposed a duty to abstain
from inducing another to enter into a contract through the use of fraudulent
misrepresentations.  Formosa Plastics
Corp. USA v. Presidio Eng=rs and
Contractors, Inc., 960 S.W.2d 41, 46 (Tex. 1998); see also Dallas Farm
Mach. Co. v. Reaves, 158 Tex. 1, 307 S.W.2d 233, 239 (1957) (A[T]he law long ago
abandoned the position that a contract must be held sacred regardless of the
fraud of one of the parties in procuring it.@).[4]


Marrot challenges the trial court=s findings of fact
and conclusions of law that Marrot engaged in fraud and misrepresentation on
the ground that there was no or was insufficient evidence to support the
element of justifiable reliance to support either tort.  Marrot contends that SBMC was a sophisticated
party in an arm=s length transaction, and that any
representation that the agreement would protect SBMC is meaningless.  We have reviewed the testimony of Mr.
Rothenberg and Ms. Long concerning the circumstances surrounding the execution
of the first agreement, and we find the evidence is legally and factually
sufficient to support the trial court=s finding of
justifiable reliance.  








In summary, Ms. Long testified that she
got to know Mr. Rothenberg as a friend from her neighborhood, and so agreed to
discuss having Marrot provide advertising services for SBMC.[5]  She had never worked with an advertising
agency before, and did not consult with SBMC=s counsel or have
counsel participate in the negotiations. 
According to Ms. Long, Mr. Rothenberg told her that the agreement was Abenign@ and was only
there to protect SBMC and to make sure the retainer was deducted from any
projects.  He also told her that unless
she signed the agreement, she was not going to be protected.  Ms. Long further testified that she would not
have signed the agreement without Mr. Rothenberg=s representations
to her.  Mr. Rothenberg admitted he told
Ms. Long that the contract was there to protect SBMC.  A review of the terms and conditions reveals
that, contrary to Mr. Rothenberg=s representations,
the agreement provides significant protections to MarrotCmany at SBMC=s expenseCand almost no
protections to SBMC.  

Thus, in this circumstance, the evidence
is legally and factually sufficient to support the element of justifiable
reliance.  See Anderson,
Greenwood & Co. v. Martin, 44 S.W.3d 200, 214B15 (Tex. App.CHouston [14th
Dist.] 2001, pet. denied) (upholding jury=s finding of fraud
based on representations that parties to contract would be Apartners@ and Ashare common goals@); Burleson
State Bank v. Plunkett, 27 S.W.3d 605, 614 (Tex. App.CWaco 2000, pet.
denied) (holding contractor established justifiable reliance on bank=s representations
that signatures on loan agreements were mere formalities and that bank Awould take care of
him and that he had nothing to worry about@).  The trial court=s findings of fact
and conclusions of law concerning fraud and misrepresentation stand. 

Accordingly, we hold that the trial court
did not err in finding that SBMC did not agree to the Standard Terms and
Conditions, and in concluding that Marrot=s fraud and
misrepresentation bar Marrot from recovery. 









C.      The
Second Agreement Was Not Breached

Marrot also contends that SBMC breached
the second agreement by failing to complete the fifth project, the physician
directory.  It is undisputed that the
parties agreed the first agreement would be canceled upon the execution and
completion of the second agreement. 
Because the second agreement was not completed, Marrot argues, the first
agreement (including the disputed terms and conditions) was revived and Marrot
is entitled to damages based on the agreement. 
Marrot also contends the evidence is legally and factually insufficient
to support SBMC=s affirmative defenses.  We have already held that the trial court did
not err in determining that SBMC never agreed to the terms and conditions, and
that Marrot=s fraud and misrepresentations bar its
recovery.  Even if the trial court=s determinations
were in error, however, Marrot cannot prevail on appeal because its challenges
to the sufficiency of the evidence of SBMC=s compliance with
the second agreement and its affirmative defenses fail.  We explain why below.

1.       The
Trial Court=s Findings

The trial court found that Marrot and SBMC
orally modified the second agreement to allow the fifth project to be completed
in 2002, and to substitute a community newsletter for the physician
directory.  The trial court also found
that SBMC fully complied with the second agreement, it paid all invoices
submitted by Marrot and all sums due and owing under both the first and second
agreements, Marrot had no damages and was not entitled to retainer fees beyond
those already paid, and Marrot could have avoided all of its alleged damages if
it had notified SBMC of its position that SBMC still needed to allow it to
complete the physician directory.  Based
on these findings and additional findings relating to Marrot=s intentional
conduct and SBMC=s reliance on Marrot=s representations
concerning the oral modifications, the trial court found that SBMC did not
breach any agreement with Marrot and Marrot suffered no damages.  The trial court also entered conclusions of
law supporting SBMC=s affirmative defenses of payment,
promissory estoppel, equitable estoppel, novation, accord and satisfaction,
waiver, and failure to mitigate. 








1.       The
Evidence of Oral Modification of the Second Agreement 

Marrot=s argument is
primarily directed to insisting that the agreements be applied as written
(including the disputed terms and conditions) and complaining that the trial
court, by its take-nothing judgment, improperly Arewrote@ them.  We have reviewed the evidence and find that
it is legally and factually sufficient to support the trial court=s findings of fact
and related conclusions of law concerning the oral modification of the second
agreement.  However, we will respond to
Marrot=s arguments to the
extent we have not already done so.

Marrot contends that both Mr. Rothenberg
and Desiree Walton, the Marrot representative with whom Ms. Long negotiated the
modification, denied making the modification, contrary to Ms. Long=s testimony.  This argument goes to credibility, which the
trial court was free to determine. 
Moreover, Ms. Long=s testimony concerning the oral
modification was corroborated by Pat Currie, the C.E.O. of SBMC.  








Marrot next argues that the course of
dealing between the parties Aproved@ there was no oral
modification, because the parties had put both contracts in writing and there
was no correspondence between them concerning any oral modification.  Additionally, Marrot contends it proved no
oral agreement existed because e-mail correspondence showed the parties
discussing the physician=s directory after the modification was
made.  However, much of the evidence also
demonstrates conduct by Marrot consistent with agreeing to the modification.[6]  Among other things, Marrot invoiced SBMC for
the newsletter for the same amount that was to be paid for the physician
directory, it never advised SBMC that it still needed to complete the physician
directory or that the first agreement was revived, and it never invoiced SBMC
for the physician directory.  Ms. Long
also explained the continued communications concerning the physician directory,
testifying that SBMC had intended to have Marrot produce the physician
directory until she had a bad experience with another Marrot employee.  Again, the trial court was free to accept or
reject this testimony.  Even Mr.
Rothenberg=s testimony called into question the
asserted course of dealing, because he conceded that he did agree to a delay of
the fifth project, although he did not view this as modifying the agreement. 

Marrot also complains there was no
consideration for any oral modification, because Marrot annually did two
newsletters for SBMC, and when the first agreement renewed automatically, more
such projects would have been included. 
However, Mr. Rothenberg testified that SBMC had no obligation to have
Marrot do a newsletter in 2002.  He also
admitted that both the newsletter and the physician directory were of
approximately the same value, and that SBMC had paid for the newsletter.  

Based on the evidence before us, we cannot
say that the trial court=s findings of fact are so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust, or that
its conclusions of law are erroneous.  

2.       The
Evidence of SBMC=s Affirmative Defenses

Marrot also contends the evidence is
legally and factually insufficient to support the trial court=s findings of fact
and its conclusions of law concerning SBMC=s affirmative
defenses of accord and satisfaction, novation, estoppel, waiver, payment, and
failure to mitigate.  Marrot=s arguments
concerning these defenses consist of stating the elements of each, asserting in
a conclusory fashion that the evidence is legally and factually insufficient,
and occasionally referring to previously-described evidence.  We have reviewed the evidence and hold that
it is legally and factually sufficient to support the trial court=s findings of fact
concerning SBMC=s affirmative defenses.  We also find its related conclusions of law
are not erroneous.

 

 








II.       The
Alleged Breach of a Licensing Agreement

In the second part of its argument, Marrot
contends that SBMC breached a licensing provision contained in the first
agreement by using the slogan AHouston=s Other Great
Medical Center@ beyond the licensing period.  Marrot contends the evidence is legally and
factually insufficient to support the trial court=s findings of fact
that Marrot did not own the slogan and had no licensing agreement with SBMC
regarding the slogan.  Marrot also
complains about the trial court=s conclusions of
law that Marrot does not own the slogan and there has not been any improper use
of the slogan by SBMC.  Finally, Marrot
complains of the related findings of fact and conclusions of law denying Marrot=s alleged
damages.  In support of its contentions,
Marrot points to evidence that SBMC used the slogan on its web site and in an
informational brochure after the first agreement was terminated.

We conclude the evidence is legally and
factually sufficient to support the trial court=s findings of
fact, and, having considered both parties= arguments
concerning the ownership of the slogan, we are not convinced that the trial
court=s conclusions of
law are erroneous.  However, even if the
trial court erred, Marrot has not proved any damages associated with the use of
the slogan after the expiration of the first agreement.  Therefore, Marrot=s claim
fails.  

To prevail on its breach‑of‑contract
claim, Marrot had to prove: (1) the existence of a valid contract, (2)
performance or tendered performance by Marrot, (3) breach of the contract by
SBMC, and (4) damages to Marrot resulting from the breach.  See Roundville Partners, L.L.C. v. Jones,
118 S.W.3d 73, 82 (Tex. App.CAustin 2003, pet.
denied).  Marrot contends it is entitled
to damages based on the alleged licensing provision contained in the body of
the first agreement; it also relies on more onerous terms contained in the
disputed terms and conditions that the trial court found were not agreed to by
SBMC.  








Marrot argues the slogan=s use beyond the
licensing period is undisputed, and so constitutes a breach of the first
agreement entitling it to, at the very least, damages consisting of the monthly
retainer multiplied by fourteen months of allegedly unauthorized use ($4,250 x
14 = $59,500).  However, Marrot cites no
authority to support its contention.[7]  Instead, Marrot merely asserts in a
conclusory fashion that the retainer reflects a minimum fee Afor any services
rendered.@ 
However, when Mr. Rothenberg was asked on cross-examination to explain
the purpose of the retainer, he testified only that A[i]t caps the fees
for consult and early production work as opposed to being on an hour-by-hour
basis times the number of people who work on any project at our agency.@  There was no testimony that the retainer
covered solely the use of the slogan, nor was there any attempt to prove up
actual damages for the use of the slogan by itself.  The first contract also contradicts Marrot=s claim.  It describes the monthly retainer or Abase fee@ as covering a
variety of Abase fee services,@ including various
activities associated with account management, creative works, and media.








Additionally, the first agreement was
canceled and superceded by the parties= second
agreement.  Marrot=s terms and
conditions did not apply to this second agreement because, as discussed above,
SBMC never agreed to them, and the second agreement did not include a
retainer.  In the absence of either
licensing provisions or a retainer, there could be no basis for a breach or
damages.  And, even if the second
contract included a retainer, by Mr. Rothenberg=s own testimony,
the retainer provided for a variety of services, and he did not attempt to show
what use of the slogan alone would cost.[8]  Mr. Rothenberg also testified that if the
physician directory had been completed in the first quarter of 2002, there
would be no lawsuit, undercutting any claim that SBMC breached the agreement by
using the slogan.  On this evidence,
Marrot cannot prevail on its legal and factual sufficiency challenges to the
trial court=s findings of fact and conclusions of law
relating to damages.  We therefore
overrule Marrot=s argument concerning the use of the
slogan.

Because we overrule Marrot=s issues concerning
breach of the agreements and use of the slogan, we do not reach its third
issue, in which it contends the trial court erred in not awarding its
reasonable attorney=s fees.

Conclusion

We overrule Marrot=s issues and
affirm the trial court=s judgment.

 

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

Judgment
rendered and Memorandum Opinion filed February 21, 2006.

Panel
consists of Justices Fowler, Edelman, and Guzman.











[1]  SBMC moved for
sanctions against Marrot and its motion was taken with the case.  Although we affirm the trial court=s judgment, we do not find that sanctions are
warranted and deny SBMC=s motion.





[2]  The liquidated
damages provision provides as follows:

 

In the event of termination, postponement, default
and/or breach of this Agreement by Client, Client agrees to pay Marrot, on
written demand from Marrot within thirty (30) calendar days from the date of
Marrot=s invoice(s): (a) a fee for Work completed and
reasonable expenses incurred and/or short (earned) rates incurred on behalf of
Client by Marrot through the date of such termination, postponement, default
and/or breach of this Agreement by Client and all attorneys fees and other
collection costs incurred by Marrot (the AAccrued
Amounts@); as well as, (b) a buyout based upon fifty-percent
(50%) of the total (i.e., Estimated and/or Actual, whichever is greater),
inclusive Gross Expenditure/Budget/Amount from the original Effective
Term/Start Date of this Agreement through the original Effective Term/Through
and/or End Date and/or Completion Date of the Term of this Agreement (as
defined in this Agreement and qualified by, but not limited to, Estimated
and/or Gross Advertising Expenditure/Budget/Amount, Estimated and/or Gross
Media Expenditure/Budget/Amount, etc.) shall be payable by Client to Marrot
Communications within thirty (30) calendar days from the date of Marrot=s invoice.  The
parties specifically agree that such buyout constitutes their best estimate of
the damages that Marrot will sustain in the event of the termination,
postponement, default and/or breach by Client of this Agreement.

 

Because we find that the trial court did not err in
finding that SBMC did not agree to the terms and conditions  and recovery by Marrot is barred by its fraud
and misrepresentation, we do not reach Marrot=s claims
that this provision is not an unenforceable penalty or that such a clause is
enforceable in the context of a contract involving the creation of intellectual
property.





[3]  The provision
in the first agreement stated, ASubject to Marrot Communications= Standard Terms and Conditions: 041593MC-A ON REVERSE
SIDE which Client has received and upon which Client shall abide.@  Interestingly,
the second agreement did not purport to contain the terms and conditions; instead,
it provided as follows: ASubject to Marrot Communications= Standard Terms and Conditions: 041593MC-A
(SBMC-030399AOR-1; dated and authorized 4/23/99 upon which Client has received
and upon which Client shall abide).@





[4]  Marrot also
argues that the fraud and misrepresentation claims are barred as a matter of
law by the existence of the following provision in the terms and conditions
page:

 

This contract contains and sets forth the entire
Agreement and understanding between and of the parties with respect to the
subject matters hereof covered by its terms and merges all prior discussions
between them. . . . Neither of the parties shall be bound by any warranties,
undertakings or representations with respect to such subject matter other than
as expressly provided herein, in prior written agreements, in a writing signed
with or subsequent to the execution hereof by an authorized representative of
the party to be bound thereby.

 

However,
the fraud and misrepresentation findings enable SBMC to avoid this provision as
well.  See Reaves, 307 S.W.2d at
239 (holding that a contract containing a merger cause can be avoided for fraud
in its inducement and that the parol evidence rule does not prohibit proof of
such fraud); see also Schlumberger Tech. Corp. v. Swanson, 959 S.W.2d
171, 179 (Tex. 1997) (holding that contract and circumstances surrounding its
formation determine whether a disclaimer of reliance is binding).

 





[5]  We do not
imply or hold that a fiduciary relationship was created.  We do, however, find the facts of this case
distinguishable from those cited by Marrot. 
See Thigpen v. Locke, 363 S.W.2d 247, 250B53 (Tex. 1962) (holding grantors of property could not
avoid conveyances by claiming they did not know what they were signing in
absence of fiduciary relationship with grantee or evidence of fraud); Coastal
Bank SSB v. Chase Bank of Tex., N.A., 135 S.W.3d 840, 843 (Tex. App.CHouston [1st Dist.] 2004, no pet.) (holding
circumstances surrounding formation of contract and nature of the disclaimers
in arm=s length transaction between two sophisticated
financial institutions that were both represented by counsel negated
justifiable reliance). 





[6]  Marrot also
contends a June 24, 2002 letter from Ms. Long to Mr. Rothenberg is Acritical to the disposition of the case@ because it constitutes an admission by SBMC that the
parties still had a contractual relationship as of that date and disproves SBMC=s position that the parties agreed to an oral modification
of the second contract.  However, a
review of the letter reveals it is equally plausibleCif not more soCthat it
reflects SBMC=s understanding that the completion of the newsletter
fulfilled its contractual obligations to Marrot, and therefore supports SBMC=s position. 





[7]  In its
argument on this point, Marrot also contends that its licensing provisions are
commonplace in the industry, and to support its argument, it invites this court
to Atake judicial notice of the innumerable treatises and
legal articles written on licensing in trademark law.@  





[8]  In another
section of its appellate brief, Marrot arguesCwithout
citation to any authoritiesCthat Athe value of intellectual property at its inception is
inherently incalculable@ and so the liquidated damages clause included in
Marrot=s terms and conditions cannot constitute an
unenforceable penalty.  The valuation of
intellectual property is a separate question from the damages for its allegedly
unauthorized use.  In fact, the evidence
shows that Marrot was willing to accept $4,250 a month for the use of the
slogan plus many other services.